STIX, KROUSE & COMPANY *v.* ROULSTON.

88  743
97  471
88  743
123  374

1. When one is employed by another to render personal services for a year, the violation by the employer of a subsequent contract having no connection with the contract for service will not justify the employee in refusing to abide by and perform his contract for the remainder of the year.

2. It being certain that there was an engagement for service for the whole year of 1884 at a stipulated compensation, no variation of that contract as to the amount of compensation would result from stipulations which one party understood as applying to that year, and the other party as applying only to the succeeding year. Giving both parties credit for veracity, their minds never met so as to modify the original contract for 1884.

February 19, 1892.

Contract. Master and servant. Evidence. Before Judge HARRIS. Campbell superior court. August term, 1891.

Reported in the decision.

THOMAS W. LATHAM, for plaintiff in error.

P. H. BREWSTER and ROAN & GOLIGHTLY, *contra.*

SIMMONS, Justice.

Roulston brought suit by attachment against Stix, Krouse & Co., non-residents of this State, for the sum of $900, with interest, on an account for salary and commissions alleged to be due him as a salesman for the defendants for the year 1884. The jury returned a verdict in his favor for $725, with interest and costs. The defendants made a motion for a new trial, which was overruled, and they excepted.

1. It appears from the record that in June, 1884, the plaintiff quit the employment of the defendants, though his contract for service was for the whole of that year. He alleges that the defendants thereupon sent for him and induced him to return to their service by proposing that if he would continue for the remainder of the year, they would increase to seven and a half per cent. his commission on sales for that year in excess of $50,000, which by his original contract was to be five per cent., and would release him from the debt which is here pleaded as a set-off. The defendants contended that if their promise was as alleged by the plaintiff, it was without consideration and void, being founded merely upon an undertaking by the plaintiff to do what he had already obligated himself to do by his original contract. "To show the reason for making the contract of June, 1884, as set up by the plaintiff," the court below, over the objection of the defendants, permitted the plaintiff to testify as to the failure of the defendants to comply with their agreement with a third person made subsequently to the original contract and

having no connection therewith. His testimony on this subject, as set out in the motion for a new trial, was as follows: "I was a member of the firm of E. N. Stone & Co., and we had a stock of goods at Gainesville, Tex. In the spring of 1884, there came a heavy snow, and our sales dropped off and our creditors began to push us. My partner, E. N. Stone, made a deed of trust to Robinson & Co., of Louisville, to secure them for a debt we owed them. Our creditors began to press us and levy attachments. The firm owed Stix, Krouse & Co. about $1,000, and I went to them and told them to levy on the stock and come in with the other creditors. They did so. I owed Colonel Bradford, my-father-in-law, about $2,000, and he had not taken any steps to collect his claim. I saw defendants and told them I heard the goods were to be sold by the sheriff in Gainesville. I also saw Col. Bradford and got Stix, Krouse & Co. to go to see him. He agreed, if they would go down and buy the stock of goods in at the sale, he would give them $4,000 for the stock, or rather, take them off their hands at $4,000, and get his money out of the stock, and pay the debt to Stix, Krouse & Co. that E. N. Stone & Co. owed them. I was present when this contract was made, and the defendants agreed to be at the sale and buy the stock of goods, and when that was done, Col. Bradford was to take them off their hands and pay $4,000 for the stock, and in addition pay them what E. N. Stone & Co. owed them. If they could buy the stock at the sale for less than $4,000, Col. Bradford was to have it at what they paid, but in addition to what he paid them was to pay them the E. N. Stone & Co. debt. They were to run the stock to $4,000, and if it went over that, they were not bound to buy for him. The invoice price of the goods was about $8,000, and they were clean, new, nice goods. When this arrangement was made, I immediately went out on the road for defendants, and did not go to the sale at

Gainesville. About the first of June, 1884, I got back to Cincinnati from my trip, and learned from Stix, Krouse & Co. that the goods had been sold at $2,200, and that Stix, Krouse & Co. had not bought them. They gave me as a reason for not buying them this: They said they sent a man there to buy them and he bid $2,-200, and got a telegram that his child was choked, and left without buying them. When I found my goods had been sacrificed and they had not bought them, I got mad. I told them, 'Here it is, the Bradford debt not paid, your debt not paid, and my goods sacrificed,' and told them I would not work for such a set of men. I quit. In a few days they sent for me, and we made the contract of June 4, 1884."

It was objected that this testimony was irrelevant and immaterial, and tended to prejudice the minds of the jury. We think the objection should have been sustained. If, as stated in the record, the purpose of the testimony was to show the reason for making the alleged new contract, it could be material only in so far as it might afford a legal ground for the abandonment of the original contract of service or for the new undertaking of the defendants. If it was incumbent upon the plaintiff to show a reason for this new undertaking, the reason must have been such as would be sufficient in law to uphold it. A reason or motive which could have no weight in sustaining the undertaking would be wholly immaterial as a reason for making it. It is clear that the violation by the defendants of their promise to a third person, made subsequently to the plaintiff's original contract of service and in no way connected therewith, would afford no legal ground for his abandonment of that contract, and could not be relied upon to uphold the new undertaking. Besides, if the matter here testified about was recognized or treated by the defendants as a reason for their new undertaking, it does not appear from this or any other part of the testimony.

2. The defendants admit that they did agree to increase the plaintiff's commission, but claim that this increase applied to the succeeding year, and not, as the plaintiff alleged, to the year covered by the original contract of service. On this point the plaintiff testified that Troy, one of the defendants, said, if he would come back and go to work for them, they would give him, for the balance of the year, the same rate of salary as before, $3,000, and instead of five per cent. commission on the amount sold over $50,000 worth, they would give him seven and a half per cent. for the year 1884, including what he had already sold, and release him from the E. N. Stone & Co. debt. In another place he undertakes to give the language used by Troy and himself on that occasion, as follows: "Mr. Troy said, 'We have thought over your proposition. We don't accept it; but if you will return to us, we will let your salary remain as it was, $3,000, and we will give you seven and a half per cent. on your overs, and we will release you from the debt of E. N. Stone & Co.', and I said, 'Very well, I will accept.'" Here it will be noticed that the year is not specified. Troy testified: "After consulting with Mr. Henry Stix, I proposed to Roulston that if he would stick to his contract, we would increase his commission for the following year to seven and a half per cent.; and he agreed to stay." Stix, another member of the firm, testified: "We sent for him and offered him two and a half per cent. more commission for the year 1885, if he would live up to his contract for the year 1884." Beitzer, the book-keeper, testified to the same proposition and its acceptance, and that he entered the agreement accordingly on the books. Outside of the plaintiff's own testimony above recited, there was no evidence tending to show that the defendants understood the arrangement as he did. It was to be assumed, unless the contrary was shown, that his services for the year 1884 were performed

under his original contract for that year. The *onus* was upon him to prove the alleged variation of the contract and increase of compensation for that period. In order to prove that the increase applied to that period, the evidence must show that the defendants so understood and intended. Reconciling the testimony as far as possible, so as to give both parties credit for veracity, it is apparent that the plaintiff and the defendants understood the arrangement differently, the former understanding that the increase applied to the year 1884, and the latter that it applied merely to the following year. It is an elementary rule of law that "there is no contract unless the parties thereto assent; and they must assent to the same thing in the same sense." 1 Parsons, Cont. *475. The proposition of one party must be met by an acceptance by the other which corresponds with it, and this cannot be the case where the proposition is misunderstood. Giving these parties credit for veracity, there was no meeting of minds so as to modify the original contract for 1884. From this view of the case it follows that the verdict, which was based upon the alleged new contract, was contrary to law and the evidence.

The reasons stated being sufficient to require a reversal of the judgment, we deem it unnecessary to enter into any further discussion of the grounds presented by the motion for a new trial.        *Judgment reversed.*