## 1475.  HARPER & COMPANY *v.* GINNERS MUTUAL INSURANCE COMPANY.

Where an insurance company makes a proposal by letter to renew a policy of insurance, on terms and conditions stated in the letter, and the insured retains the policy, but makes no reply to the letter and does not pay the premium or indicate in any manner an acceptance of the policy until after the happening of a fire several months after the proposed insurance, there is no completed contract of insurance. There must be some act of acceptance, binding on the party accepting as well as on the party proposing, to make a contract.

Action on insurance policy, from city court of Washington—Judge Hardeman. October 21, 1908.

Argued December 11, 1908.—Decided May 4, 1909.

*F. H. Colley, William Wynne,* for plaintiffs.

*Cobb & Erwin, R. C. Norman,* for defendant.

HILL, C. J. Harper & Company sued the Ginners Mutual Insurance Company on a policy of insurance covering their cotton gin. The insurance company made three defenses: (1) that there was no complete contract of insurance; (2) that if there was a complete contract of insurance, it had lapsed by failure to pay the premium; and (3) that if the contract of insurance was completed, it was avoided and forfeited by the operation of the gin at night, in violation of its terms and conditions. At the conclusion of the evidence, the court directed a verdict for the defendant; and this is the error assigned.

Was there, under the facts, a complete contract of insurance? The facts show that the insurance company had issued to Harper

& Company a policy of insurance covering this cotton gin, which expired on September 22, 1907. Just before the expiration of this policy, the secretary of the insurance company, without any knowledge or intimation that Harper & Company desired the policy renewed, voluntarily wrote a renewal policy covering the same property, and on August 13, 1907, mailed this renewal policy to Harper & Company, accompanied by the following letter (omitting immaterial parts) : "Enclosed find policy number 964 covering $2,250 upon your ginning outfit. . . For some reason unknown to us you allowed your old policy to lapse on our 15 per cent. call. We have, however, taken the liberty of renewing the same from the date upon which it would have expired had it been kept in force, namely, September 22. Attached to this policy you will find our regular form 25 per cent. dividend note and receipt for policy. Kindly sign and return to us, together with your check for $88.59, same being 75 per cent. premium due and payable upon delivery of policy." This letter was duly received by Harper & Company, but its receipt was not acknowledged, and the requests as to signing the premium note and receipt for policy and sending check for $88.59, being the 75 per cent. premium due and payable upon delivery of policy, were entirely ignored. Thereafter, on September 26, 1907, the secretary of the insurance company wrote Harper & Company the following letter (omitting immaterial parts) : "We mailed you some weeks ago policy covering your ginning outfit, and as yet we have received no reply from you. Our records show that the premium under this policy is $118.13; after deducting the amount of dividend the balance due is $88.60. We wish to say that we are endeavoring to close up all open accounts, and if you are not in position to pay cash for this premium, we will be glad to carry same for you thirty or sixty days from date of policy without interest. . . If you wish your matter continued, kindly advise us, and we will furnish you with blank note; otherwise, we will thank you for remittance covering the 75 per cent. of premium as above indicated. Trusting that this may be satisfactory, and awaiting your reply, we are," etc. Harper & Company admitted receiving the foregoing letter, and admitted that they made no reply, but absolutely ignored it. On the evening of October 17, 1907, about dark, the gin-house described in the policy was destroyed by fire. Proofs of loss were

duly furnished, and, the company refusing to pay the policy for the reasons above stated, this suit was brought.

The secretary of the company testified that, having received no response from either one of the two letters above quoted, prior to the day of the fire he marked upon the insurance company's policy register, at the place where this policy had been registered, the words, "not taken," in red ink; and the record was introduced in evidence and showed this entry.

Harper admitted that he had never, up to the time of the trial, paid or tendered any premium to the insurance company. He did not testify that he had accepted the policy, or had intended to accept the policy and pay for it; but he insisted that the contract of insurance was complete, because of the following facts: that his first policy with the company had been taken out at the solicitation of Quinn, an agent of the company, and that, some time prior to the expiration of this policy, this agent had come to his place of business and solicited a renewal of the policy, and he agreed with him to take the renewal policy, provided he was given thirty or sixty days to pay the premium; and the agent agreed to this. The insurance company had received no notice of this agreement between Harper and Quinn; and both Quinn and the secretary of the company testified that Quinn had no authority to write policies, or to give time for the payment of premiums. Two witnesses, neighbors of Harper, testified that Harper told them that he had no insurance on his gin. To one of these witnesses he made the statement during the fire, and to the other witness he made the statement the morning after the fire.

The insurance company contended that the sending of the renewal policy to Harper & Company by its secretary was simply a proposal to effect a contract of insurance upon the terms stated in the letter of August 13, 1907, enclosing the policy; and that as Harper & Company had not acknowledged receipt of the policy or complied with the terms set forth in the letter, the policy was not accepted, and no contract of insurance was consummated. Section 3637 of the Civil Code, which is a codification of simple, elementary principles of law, reads as follows: "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, *the assent of the parties to the terms of the contract,* and a subject-matter upon which it can operate."

"While a contract can be made by correspondence through the mail, or by telegram, the offer of the seller must be accepted by the purchaser unequivocally, unconditionally, and without variance of any sort. There must be a mutual assent of the parties, and they must assent to the same thing in the same sense." *Robinson* v. *Weller,* 81 *Ga.* 705 (8 S. E. 449) ; *Stix* v. *Roulston,* 88 *Ga.* 748 (15 S. E. 826) ; *Harris* v. *Lumber Co.,* 97 *Ga.* 465 (25 S. E. 519) ; *Larned* v. *Wentworth,* 114 *Ga.* 209 (39 S. E. 855). "The acceptance of a proposal of insurance must be evidenced by some act that binds the party accepting. A mental resolution that can be changed is not sufficient. Any appropriate act which accepts the terms as they were intended to be accepted, so as to bind the insurer, is sufficient to show the concurrence of the parties, the meeting of minds." Cooley's Briefs on the Law of Insurance, 421. "Where the proposal to insure comes from the insurer, he must be notified of the acceptance of the offer by the insured." Id. 423, 424, 432. The application of these elementary principles of law to the facts of this case, we think, clearly demonstrates that there was no complete contract between the insured and the insurer. It is admitted by Harper & Company that there was no actual acceptance by them of the contract of insurance, and no compliance with any of the terms contained in the letter enclosing the policy, which would give evidence of such acceptance and make effective the contract of insurance. The mere statement which Harper made to the soliciting agent, Quinn, that he would renew the policy upon terms as to the payment of premiums, although this agent stated that the terms would be satisfactory to the company, was not binding upon the company, and certainly did not bind Harper & Company to take the policy. This soliciting agent had no authority to issue policies or change the conditions as to the payment of premiums, and Harper & Company could have changed their minds and have refused to accept the policy when tendered to them. Besides, the evidence shows that this agreement made between the soliciting agent and Harper was never communicated to the insurance company, and, therefore, was never assented to by it. The secretary of the company, who alone was authorized to make contracts of insurance, testified, that he had received no communication from Quinn in reference to re-

newing Harper & Company's policy; that he had no intimation that a renewal was desired; and that the sending of the policy by him to Harper & Company was upon his own initiative, and simply an offer on his part, representing the insurance company, to effect a contract of insurance upon the terms stated in his letter enclosing the policy. Conceding that the statement of Harper as to his agreement with Quinn, the soliciting agent, was true, yet, when he received the letter from the company itself, enclosing the renewal policy, the contents of this letter clearly put him on notice that the insurance company rejected any application for the policy on the terms proposed by him to Quinn, and constituted a counter-proposal by the company to make a contract of insurance only upon the terms stated in the letter. Any impression or understanding that Harper & Company had, arising from the interview with Quinn, that time was to be given for payment of premiums, was completely removed by the positive statement contained in the letter of the secretary of the insurance company, demanding an immediate payment of the premium then due. It was the duty of Harper & Company, therefore, to assent to the terms of the contract, if they expected to receive any protection thereby. Their failure to assent to the terms of the contract as proposed by the company, their failure to pay the premium, and their conduct in absolutely ignoring the matter, show conclusively that their minds did not assent to the contract as proposed by the company, and that, therefore, there was no complete contract of insurance in existence between them when the fire occurred. Not only does their failure to act show that they did not intend to make the contract, but the statement by Harper, at the time of the fire and immediately after the fire, that he had no insurance, is strong corroboration of the other facts showing that there was no contract consummated. It was too late, several months after the proposal of insurance had been made by the insurance company to Harper & Company, which they had completely ignored, and after the property covered by the alleged insurance policy had been destroyed by fire, for them to assent to the terms upon which the contract of insurance had been proposed.

*Judgment affirmed.*