## AMERICAN NAT. INS. CO. v. BALL.
### (No. 6314.)

(Court of Civil Appeals of Texas. San Antonio.
Jan. 14, 1920.)

1. INSURANCE ⬤═146(1) — POLICY HOLDER
BOUND BY CONDITIONS THOUGH HE FAILS TO
READ THEM.

A policy holder is bound by the printed conditions of the policy, though he failed to read them.

2. INSURANCE ⬤═145(1) — RIGHT OF HEALTH
AND ACCIDENT INSURER TO TERMINATE POLICY.

Where a health and accident policy extended until February 1, 1908, and for such further periods as might be stated in renewal receipts, held that the insurer was authorized under the provision of the policy, declaring that acceptance of any renewal premium shall be optional, to terminate the policy by refusing to accept a renewal premium; it being immaterial that the insurer's agent, who gave notice of termination, referred to the policy having lapsed.

3. INSURANCE ⬤═198(6)—PLEADING IN ANSWER CONDITIONS WARRANTING TERMINATION OF POLICY UNNECESSARY.

The failure of insurer, which terminated a health and accident policy, to plead the policy condition authorizing it to terminate will not prevent it from defeating recovery by insured of premiums already paid, on the theory there was a breach of contract, on the ground that the policy allowed it to terminate the risk; such condition being part of the contract alleged to have been breached.

Appeal from Guadalupe County Court; J. B. Williams, Judge.

Action by William B. Ball against the American National Insurance Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Greenwood & Short, of Seguin, for appellant.

Wurzbach & Wirtz, of Seguin, for appellee.

MOURSUND, J. This is a suit by appellee to recover of appellant certain premiums paid by him upon two insurance policies, the suit being based on the theory that the second policy was issued in lieu of the first, and was a continuation of the contract, and that the defendant breached the second contract, thus entitling plaintiff to rescind and recover premiums.

The allegations concerning the breach were in effect that the policy bound the defendant to insure plaintiff so long as he paid his monthly premiums, and that despite such provision the defendant, on February 3, 1919, returned to plaintiff a post office money order for $1.50, sent to pay premium for February, and notified plaintiff that his policy had lapsed as of January 31, 1919, and it would not be permissible to continue the same on account of plaintiff's age.

The answer consisted of various exceptions, a general denial, a special plea that the policy contained a certain cancellation clause, and that defendant only complied with said clause when it notified plaintiff that it would no longer insure him and returned his check.

Plaintiff filed a supplemental petition containing exceptions; a general denial; a special plea that defendant failed to comply with the cancellation clause, and waived the same by letter dated January 20, 1919, which letter, it was contended, constituted an offer to keep the policy in force for as many months as plaintiff should pay premiums, or at least for the "next policy premium month, if such premium was paid in accordance with the terms thereof," and that said offer had been accepted; a special plea that the clause of the policy relied on by defendant, if construed as contended by defendant, is harsh, unreasonable and contrary to public policy; and a special plea that if the contract could be canceled the proper construction of its provisions would make it mean that such cancellation involved the return of all premiums paid.

The defendant filed a supplemental answer, in which it pleaded the cancellation more fully, and pleaded other matters not necessary to mention.

The trial resulted in a judgment for plaintiff for $300, the amount of the premiums paid, with interest, less the amount paid plaintiff as sick benefit, with interest.

On May 14, 1906, W. B. Ball took a health and accident insurance policy with appellant. On December 23, 1907, he took out a different policy in lieu of the first one. He testified that it was his purpose to continue insurance in the same company. There is no evidence that he was induced by fraud to abandon the old policy in favor of the new. The new policy does not refer to the first one in any way.

We will state so much of the new policy as is material upon the issues raised. It provides that the company "does hereby insure W. B. Ball, subject to all the conditions herein contained and indorsed hereon, from 12 o'clock noon of the day the contract is dated until 12 o'clock noon of the first day of February, 1908, and for such further periods, stated in the renewal receipts, as the payment of the premiums specified in said schedule will maintain this policy and insurance in force."

The policy contained six conditions of which the first and third read as follows:

"(1) If the payment of any renewal premium shall be made after the expiration of this policy or the last renewal receipt, neither the as-

sured nor the beneficiary will be entitled to recovery for any accidental injury happening between the date of such expiration and 12:00 o'clock noon, standard time, of the day following the date of such renewal payment; nor for any illness originating before the expiration of thirty days after the date of such renewal payment. The acceptance of any renewal premium shall be optional with the company."

"(3) The company may cancel this policy at any time, without prejudice to the rights of the assured to any claim then pending, by written notice of cancellation served upon or mailed to the address of the assured as it appears of record with the company, together with the company's check for the unearned portion, if any, of the premium paid, which check shall be sufficient tender."

[1] While appellee testified he only read the conditions casually, there can be no doubt that he is bound by them, and it is inmaterial what construction he placed upon provisions of the policy.

[2, 3] Appellee paid the monthly premiums which accrued under the terms of the policy to the duly authorized collector for the company up to and including the premium for January, 1919. On January 20, 1919, the company notified him of a change in its collecting system, to the effect that premiums should be remitted to McGlawn, Smith & Co. at Houston, by post office or express money order. Attention was called to the fact that the premium is due to be paid by the 1st of each month and should reach the division office by that date, and the further statement was made that remittance should be mailed on or before the 1st. Under the policy premiums could be paid annually in advance. The letter of January 20, 1919, suggested that payment could be made for three or six months, or for a year, if desired.

On January 29, 1919, appellee mailed at Seguin a post office money order payable to said agent, and in the regular course of mail it should have reached Houston on the morning of January 30, 1919. The agents received this money order, and returned it to appellee with a letter date February 3, 1919, containing the following statements:

"We are in receipt of yours inclosing post office money order in the amount of $1.50 in payment of the premiums on your policy No. 5197 and we beg to advise that we are returning this remittance and advise you that it will not be permissible for us to continue your policy in force on account of your age.

"We have carried the liability on this policy for all of the premiums that you have paid, including January, 1919, and the policy lapsed as of January 31st and we would not care to renew it for February and other months, as said to you above, on account of your advanced age."

On February 21, 1919, appellee, through his attorneys, wrote appellant, reciting the facts concerning remittance and return thereof, and stating:

"Since you have thus repudiated your contract, we demand, on behalf of the policy holder, that you return to him the amount of all assessments paid by him, together with legal interest on each assessment from date of payment."

This letter was answered by letter of February 26, 1919, calling attention to the cancellation provision of the policy, and stating that the action of the company was within its rights, and it was entitled to retain premiums received by it.

In the meantime, on February 24, 1919, a card was sent appellee by McGlawn, Smith & Co., stating that they regretted to note that he had overlooked the importance of paying premium, thereby allowing policy to lapse, and inquiring why he discontinued his insurance. This was evidently sent through mistake, and was never answered by appellee.

We see no ambiguity in the policy such as would justify a holding that it insured appellee as long as he should elect to pay premiums. It specifically states that subject to the conditions it insures him to February 1, 1908, and for such further periods, stated in the renewal receipts, as the payment of the premiums specified in the schedule will maintain the policy in force. There can be no doubt that the contract provides that insurance during the period stated and any renewal thereof is subject to the conditions, among which are the two hereinabove copied. In addition, the policy only provides for insurance during such renewal periods as are stated in renewal receipts. No renewal receipt was ever issued for February, 1919, so it appears that there was no need of any cancellation. This part of the policy, when considered in connection with the two conditions, makes it clear that it was agreed that the company had the right to refuse to accept any premium, and thus prevent a renewal, and had the right, if it had issued a renewal receipt, to cancel the policy and renewal by returning the unearned part of the premium. Such a provision was important because premiums could be paid for a year in advance.

In this case the company declined to renew the policy, and returned the money order. It was acting strictly within its rights in so doing, and it can make no difference whether it termed its act a cancellation or not. Without a renewal receipt appellee had no insurance for February, 1919, and appellant had the right to refuse his premium and refuse to issue the renewal.

As appellee pleaded and attempted to show a breach of the contract, he must lose if the evidence fails to show such a breach. It is immaterial whether the company pleaded

the provision that "the acceptance of any renewal premium shall be optional with the company." It is a part of the contract alleged to have been breached, and when the facts are considered in connection with the contract it is shown there was no breach of the contract by the appellant.

We can see no merit in the contention that the policy only provided that renewal premiums could be refused if paid after the expiration of the previous renewal. If it can be canceled at any time upon return of unearned premium, certainly the company could refuse to accept further premiums and thus terminate the policy. If such was not the case, the company would be bound to accept the premium, but the next day could return the unearned part and cancel the policy.

Much stress is laid upon the use of the word "lapsed" in the letter of February 3d, but when the entire letter is read it is apparent that there is no claim that the premium did not arrive within the proper time, but that it was decided by the company to decline to further insure appellee, and the word "lapsed" was used to express the idea that the insurance terminated on January 31st, the date to which it had been extended by premiums previously accepted.

We are unable to agree with the contention that if the company terminated the policy appellee, under the terms thereof, was entitled to have all premiums repaid to him. The contract constituted a specific agreement that for a certain consideration appellee would be insured for a certain time. There was no agreement binding appellant to insure him for any further period. Each renewal receipt extended the period, and at the end of each the contract could have been treated as one fully performed by each, and which one refused to renew. In addition, the plain implication is that all premiums shall be retained except those unearned at the time of cancellation. Appellant did not retain any unearned premium.

Appellee believes that it would be very unjust to permit the company to terminate the insurance and fail to return the premiums. The policy is apparently liberal enough in its protective features as a health and accident policy, in view of the premium exacted, but it would take an expert in insurance matters to decide whether appellee made a bad contract or a good one. The fact remains that the terms are clear; that appellee was not misled by any fraudulent representations to enter into such contract; that it did not purport to insure him during his entire life; and that it was terminated in substantial compliance with its provisions.

The contract considered in the case of Ins. Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789, was one for the term of the assured's natural life, and not an assurance for a single year, with the privilege of renewal from year to year. The policy considered in this case was a typical accident and health policy running for a definite term, and such further terms as might be stipulated in renewal receipts, and it is clear that the insurer reserved the right to decline to renew, and the right to cancel during the original period, or any renewal period, by returning only the unearned portion of the premium.

We conclude that appellee failed to show any breach of the contract by the appellant.

The judgment is reversed, and judgment rendered that appellee take nothing by his suit.