REDEMAN, Respondent, vs. PREFERRED ACCIDENT INSURANCE COMPANY OF NEW YORK, Appellant.

*April 4—May 1, 1934.*

*Timothy J. Hannan* of Milwaukee, for the appellant.

*P. A. Martineau* and *E. B. Martineau,* both of Marinette, for the respondent.

NELSON, J. There is no dispute as to the material facts. On March 3, 1920, the defendant, hereafter called the company, issued to the plaintiff a health insurance policy wherein and whereby it insured the plaintiff for a period of three months against disability from sickness, subject to the provisions and limitations of the policy. The policy provided:

"No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the company and such approval be indorsed thereon. . . .

"Section G. This policy may be renewed with the consent of the company, by the payment of the premium in advance, subject, however, to all the conditions and provisions of the policy."

The policy was issued by the company through Harry A. Somerville, its local agent, at Marinette, Wisconsin. On June 3, 1920, the policy was renewed with the consent of the

company and also at the expiration of each subsequent three months' period up to March 3, 1931. During the eleven years that the policy was concededly in force, it was customary for the company, ten or fifteen days prior to the expiration date of any renewal of the policy, to send to the plaintiff a notice of the amount of the premium required to be paid to renew the policy, and that payment thereof should be made to an authorized agent of the company or to the home office, on or before a certain date. Shortly before such date the company customarily sent to its agent Mr. Somerville a renewal receipt which embodied the renewal agreement, and which was to be delivered to the plaintiff upon payment of the required premium. The renewal receipts provided in part as follows:

"In consideration of the quarterly premium, the Preferred Accident Insurance Company of New York hereby continues in force your policy . . . subject to all its terms and provisions, for three months from the date shown."

At or about the time when a renewal premium was due Mr. Somerville would sometimes call up the plaintiff to remind him that the renewal premium was due, but generally would call at the plaintiff's office for the renewal premium. Sometimes the premium was paid before it was due but never later than five or six days thereafter. On at least two occasions the plaintiff remitted the renewal premiums direct to the company at New York. The reason for such remittances does not clearly appear unless the explanation of the plaintiff be true that such remittances were made direct to the company because Mr. Somerville at such times was probably out of town. Shortly prior to June 3, 1931, when the policy was about to expire, the company sent its customary notice to the plaintiff. On May 29, 1931, the company wrote Mr. Somerville a letter in which it was stated that it would not renew the plaintiff's policy. Before receiving this

letter and on June 2, 1931, Mr. Somerville collected the premium which would have been payable on June 3, 1931, had the company been willing to renew the policy. At the time Mr. Somerville collected the premium he had not received the letter from the company and apparently was of the opinion that the usual renewal receipt would be forwarded to him for delivery to the plaintiff. Upon receipt of the letter from the company Mr. Somerville said nothing to the plaintiff regarding it, but permitted the plaintiff to believe that the policy was renewed for the period beginning June 3 and ending September 3, 1931. Mr. Somerville did not inform the company that the plaintiff had paid the June 3 renewal premium, nor did he enter it upon his books or remit the proceeds thereof to the company. He apparently hoped that he might later succeed in having the company consent to a renewal of the policy, although the record is quite barren of any evidence tending to show that prior to the early days of October he made any effort to have the policy renewed or reinstated. About the 4th or 5th of October Mr. Somerville told one of the company's district agency supervisors that he had collected the June 3 premium and urged him to make an attempt to have the company renew or reinstate the policy. Mr. Clanahan, the supervisor, wrote to the company, but the company positively refused to renew the policy for the reason that its records revealed that the risk was unsatisfactory and in its opinion one which, under no circumstances, should be reinstated. During the time that the policy had been in force the company had paid to the plaintiff sick benefits amounting to about $1,900, of which $657.14 had been paid to the plaintiff on January 5, 1931, for sickness asserted to have been thrombo-phlebitis in the veins of the right leg which developed from a chicken-pox pimple.

The three months' period for which the plaintiff had paid the June 3 renewal premium expired September 3. Prior to

such expiration date the company sent the plaintiff no notice of renewal premium. No renewal receipt bearing date September 3 was forwarded to Mr. Somerville. No request for payment of the premium was made by Mr. Somerville and no premium was collected by him. No charge against the plaintiff was made by him, nor was any credit orally extended. Nothing appears to have been done by either the plaintiff or by Mr. Somerville regarding the September 3 renewal premium, and no conversation relative to the status of the policy was had until about the middle of October. Mr. Somerville testified that at that time he saw the plaintiff on the golf course and informed him that the company had gone off the risk, and that he should not break his neck on a trip which he was then about to take. He also testified that later on, at the plaintiff's office, he again informed him of the situation. However, the plaintiff denied having been told by Mr. Somerville that the company was off the risk and the court found the facts to be as testified to by the plaintiff. On October 31 the plaintiff was taken sick, which sickness shortly thereafter developed into another attack of phlebitis. He was compelled to leave his office on November 9, and thereafter suffered total disability until March 1, 1931. On November 19 Mr. Somerville was called to the plaintiff's home by Mrs. Redeman so that she might give proper notice of her husband's disability pursuant to the requirements of the policy. Mr. Somerville told her that the policy was not in force.

In answer to a letter thereafter written by plaintiff's secretary, the company wrote the plaintiff, under date of December 18, 1931, that its records disclosed that his policy had expired on June 3, 1931, that the policy had lapsed as of that date, and that its records revealed that the policy was not to be renewed because the company had been informed of an impairment of plaintiff's physical condition. On July 18,

1932, in answer to a letter from plaintiff's attorneys, the company wrote that the plaintiff's policy had lapsed as of June 3, 1931, and further stated:

"Inasmuch as the insurance was not in force at the time his illness commenced, it will be appreciated no liability could attach in Dr. Redeman's favor."

At the close of the testimony both parties moved for a directed verdict. The court thereupon rendered its decision. The court was of the opinion that the company was estopped as a matter of law to assert that the policy was not in force or effect on November 9, when the plaintiff became disabled, for the reason (1) that a custom had grown up which required the company (a) to notify the plaintiff of the date on which a renewal premium would be due, and (b) to have Mr. Somerville call for the premium, and (2) that the company, having asserted in its letters that the policy had lapsed on June 3, 1931, it could not thereafter defend on the ground that the policy had lapsed on September 3, 1931.

The first reason upon which the court grounded its decision is, in our opinion, not sound. The trial court was of the opinion that this action is ruled by *Knoebel v. North American Accident Ins. Co.* 135 Wis. 424, 115 N. W. 1094. In the *Knoebel Case* a claimed forfeiture of an accident policy was involved. Under the facts of that case it was held that the insurance company was estopped to declare a forfeiture. The law of that case is good law. It is elementary that courts do not regard forfeitures of insurance policies with favor, especially where an insurance company has by its acts led an insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred. Under such circumstances an estoppel may arise. *New York Life Ins. Co. v. Eggleston,* 96 U. S. 572, 24 L. Ed. 841. Here, however, we are not dealing with a forfeiture of a policy but with a policy which had lapsed in accordance with its plain provisions. It was not renewed with the consent of the company and therefore ceased to have force or effect,

in the absence of some affirmative act by the company which would lead the plaintiff to believe that the company had consented to a renewal of the policy. It is generally held that a renewal of a policy of insurance is a contract and cannot be effected or consummated without the mutual assent of the parties, i. e., a meeting of the minds as to the essentials of the contract. See cases cited in 32 C. J. p. 1143, § 251. What effect should be given to the fact that the company sent a notice of premium to the plaintiff prior to June 3, 1931, upon which the plaintiff acted is quite immaterial, since the renewal period for which that premium was paid ended on September 3, 1931. Neither Mr. Somerville nor the company did anything on or about September 3 upon which an estoppel may be based unless the failure of the company to notify the plaintiff that it would not renew the policy so operated. In our opinion such failure did not give rise to an estoppel. The plaintiff knew the nature of the policy issued to him, knew that it was a health policy, and continued in effect for periods of only three months unless renewed with the consent of the company. We cannot subscribe to the proposition that an insured may recover upon a health insurance policy issued for a limited period of time, when the disability for which recovery is sought arises over two months after the policy has expired, and when it appears that the insurer has done nothing to lead the insured to believe that the policy has been renewed.

We are not dealing with questions involving an extension of credit to the insured or of a waiver by the company of prompt payment of a premium (*Ellerbeck v. Continental Casualty Co.* 63 Utah, 530, 227 Pac. 805), but with a policy which was not in force or effect because not renewed according to its terms. The policy had no force or effect beyond its expiration date unless renewed or reinstated with the consent of the company. To hold that the policy was still in force two months and six days after it might have been renewed would require us to write into the policy an agree-

ment which the parties did not make. *Greenwaldt v. United States Health & Acc. Ins. Co.* 52 Misc. 353, 102 N. Y. Supp. 157. The company did not agree to give the plaintiff notice at the expiration of any renewal period in case it declined to renew the policy. Unless, therefore, the second ground upon which the trial court based an estoppel is sound, the plaintiff cannot recover.

The trial court held that the defendant was estopped to assert that the policy was not in force on November 9, 1931, because it had theretofore and prior to the bringing of the action, stated in its letter to the plaintiff and to his attorneys that the policy had lapsed as of June 3, 1931, rather than as of September 3, 1931.

The plaintiff contends that where an insurance company refuses on some specific ground to pay a loss all other defenses are waived. The rule which the plaintiff no doubt seeks to invoke may not be so broadly stated. The correct rule is that where an insurance company, having full knowledge of another defense which it has, asserts a specific defense to a claim under an insurance policy, it will not be permitted thereafter to shift its ground and assert such other defense after expense of suit has been incurred. *Wolf v. District Grand Lodge,* 102 Mich. 23, 60 N. W. 445; *Taylor v. Columbian League,* 135 Mich. 231, 97 N. W. 680; *Brink v. Hanover Fire Ins. Co.* 80 N. Y. 108; *Georgia Home Ins. Co. v. Allen,* 128 Ala. 451, 30 So. 537; 14 R. C. L. § 374.

On December 18, 1931, evidently in response to an inquiry made on behalf of the plaintiff as to the date of the termination of the policy, the company stated that the policy had expired on June 3, 1931. Again on January 15, 1932, the company wrote the plaintiff that it had no information to offer other than that set forth in its letter of December 18. On July 18, 1932, the company stated, in a letter to the plaintiff's attorneys, that the policy lapsed as of June 3, 1931, and that "inasmuch as the insurance was not in force

at the time his illness commenced, it will be appreciated no liability could attach in Dr. Redeman's favor." This letter specifically stated that there was no liability on the part of the company because the policy was not in force at the time the plaintiff's illness commenced. Plaintiff's disability commenced November 9, 1931. At the time the company wrote to the plaintiff's attorneys it had no knowledge that the June 3 renewal premium had been paid. It of course knew that it had not consented to a renewal of the policy on either June 3 or September 3. To hold that the company may not defend on the ground that the policy was not in force on November 9, because it had theretofore stated that the policy had lapsed on June 3, is a step we cannot take. Liability was denied because the policy was not in force when plaintiff's illness commenced. After writing the letter to plaintiff's attorneys the company did not change its defense or shift its ground, which always had been that the policy was not in force on November 9, 1931. After the company learned of what had occurred in June it had the right, in our opinion, consistently to assert in defense of the action that the policy was not in force on November 9, because it had not been renewed in September.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.