# WORLD INSURANCE COMPANY *v.* PERRY

[No. 200, October Term, 1955.]

*Decided July 11, 1956.*

The cause was argued before Brune, C. J., and Dela-plaine, Collins, Henderson and Hammond, JJ.

*Melvin J. Sykes,* with whom were *S. Robert Levinson* and *Max Sokol* on the brief, for the appellant.

No attorney for the appellee.

Delaplaine, J., delivered the opinion of the Court.

This is a declaratory judgment proceeding brought by Dr. Nathaniel Harold Perry, a dentist, of Baltimore, against World Insurance Company, a body corporate, of Omaha, Nebraska, to obtain (1) a judicial declaration that a health and accident insurance policy, which the company had issued to him in 1940, is still in full force and effect, and (2) a preliminary injunction restraining the company from cancelling the policy.

Under the Uniform Declaratory Judgments Act, any person interested under a contract may have determined any question of construction or validity arising thereunder, and obtain a declaration of rights, status or other legal relations thereunder. Code 1951, art. 31A, sec. 2. The remedy of declaratory decree is appropriate in this case for the purpose of construing the insurance policy and determining the rights and obligations of insurer and insured under its provisions. *Turner v. Manufacturers' Casualty Insurance Co.*, 206 Md. 601, 112 A. 2d 670; *Commercial Casualty Insurance Co. v. Webb*, 210 Md. 8, 121 A. 2d 832; *Malley v. American Indemnity Corporation*, 297 Pa. 216, 146 A. 571, 81 A. L. R. 1322; *Travelers Insurance Co. v. Greenough*, 88 N. H. 391, 190 A. 129, 109 A. L. R. 1096; *Equitable Life Assurance Society v. Hemenover*, 100 Colo. 231, 67 P. 2d 80, 110 A. L. R. 1270; *Aetna Life Insurance Co. v. Haworth*, 300 U. S. 227, 57 S. Ct. 461, 81 L. Ed. 617, 108 A. L. R. 1000.

Complainant made the following allegations in his bill of complaint: (1) that he purchased the insurance policy in October, 1940, for the consideration of a premium of $33 per annum; (2) that he regularly paid the premium every year through the year 1953, and on March 8, 1954, he tendered the sum of $33 as the premium for the year 1954; (3) that defendant refused to accept this premium unless he would sign a waiver of benefits for any illness caused by disease of the heart or circulatory system; (4) that the policy contains a non-cancellable provision, and he was advised by the agent that this clause meant that the policy could not be cancelled by the company for any reason so long as he desired to keep the policy in force and complied with its terms; and (5) that he believes the policy is still in force and effect, as he has abided by all its terms and proffered payment of the premium, but the company refuses to recognize the policy as still being in force and claims that it is cancelled.

The non-cancellable provision, upon which complainant relied, reads as follows:

"This policy is effective and can not be cancelled by the Company for any cause, except for fraud and

misrepresentation, during any period it is actually in force in accordance with its terms as to acceptance, payment of premium and renewal, but the Insured may cancel same at will. * * *"

Defendant, in its answer to the bill, asserted that it had the right under one of the "general agreements" in the policy to refuse to accept any renewal premium, and also called attention to one of the "standard provisions" which reads: "No change in this policy will be valid, unless approved by a chief executive officer of the Company and such approval be endorsed hereon."

The general agreement, upon which the insurer relied, reads as follows:

"This Policy shall not be in force until the premium has been actually received, accepted and acknowledged at the Home Office in Omaha, Nebraska, and the official premium receipt is dated and issued, all while the Insured is alive, in good health and free from injury, sickness or disease. Acknowledged acceptance of the Insured's first premium shall place this policy in force at 12 o'clock noon, Central Standard Time, on the date of such acceptance, but only to cover accidental injury thereafter sustained and such sickness or disease as may originate more than 15 days after the date of such acceptance. A receipt signed by the Secretary or other officer of the Company shall be the only binding evidence that a premium has been paid; and renewal premiums must be mailed in sufficient time to reach the Home Office on or before 12 o'clock noon, Central Standard Time, of the date when due, as stated in the policyholder's last premium receipt, which payment, upon acknowledged acceptance by the Company, shall renew this Policy for such term as the payment shall cover. If not in force as aforesaid, the extent of the Company's liability shall be the return of the premium or premiums paid, which amount will be returned by the Company."

The chancellor regarded the policy as one continuing contract, which could not be terminated by the insurer except for non-payment of premium, and not a series of contracts arising on payment of each premium. He thought that the policy is ambiguous, and, in order to construe it liberally in favor of the insured, he held that the insurer was estopped from refusing to accept the renewal premium unconditionally, inasmuch as it had accepted renewal premiums unconditionally for twelve years, and the physical condition of the insured had now become such that he could not obtain desirable insurance in any other company.

The chancellor accordingly entered a decree declaring that the policy is in full force and effect so long as the insured shall continue the payment of premiums thereon, and shall not be subject to cancellation by the insurer except for nonpayment of premiums, and restraining the insurer from cancelling the policy because of the failure or refusal of the insured to sign an elimination rider excepting disease of the heart or circulatory system. The insurer appealed from that decree.

It is accepted as a general rule that a renewal of an insurance policy by the payment of a new premium and the issuance of a receipt therefor, where the renewal is in pursuance of a provision to that effect, is not a new contract but an extension of the old. Thus it is held in Maryland that where an accident policy contains an express provision for its renewal by payment of the premium annually in advance, a renewal prevents the lapse of the policy and extends its life, and does not constitute a new contract. *Standard Accident & Life Insurance Co. of Detroit v. Wood,* 116 Md. 575, 594, 595, 82 A. 702.

The rule is equally clear that a renewal of a policy by the payment of a new premium and the issuance of a receipt therefor, where there is no provision in the policy for its renewal, is a new contract in that it cannot be made without the mutual consent of the parties and a meeting of the minds on all the essential terms of the contract. The parties may renew the policy on terms different from those contained in the original contract; but, of course, the terms of the policy,

unless otherwise expressed, are not changed by a renewal, but are merely continued in force as binding upon the parties. *Mallette v. British-American Assurance Co.,* 91 Md. 471, 482, 46 A. 1005; *City Mortgage & Discount Co. v. Palatine Insurance Co., Limited,* 226 Ala. 179, 145 So. 490; *W. P. Harper & Co. v. Ginners' Mutual Insurance Co.,* 6 Ga. App. 139, 64 S. E. 567; *Hartford Fire Insurance Co. v. Walsh,* 54 Ill. 164, 5 Am. Rep. 115; *Redeman v. Preferred Accident Insurance Co. of New York,* 215 Wis. 321, 254 N. W. 515, 518; *Grogan v. Travelers' Insurance Co.,* 25 Colo. App. 517, 139 P. 1045; *Kentucky Vermillion Mining & Concentrating Co. v. Norwich Union Fire Insurance Soc.,* 9 Cir., 146 F. 695, 701.

These rules are illustrated by the decision of this Court in *Firemen's Insurance Co. v. Floss,* 67 Md. 403, 414, 415, 10 A. 139, 142. In that case the Court had under consideration two policies of fire insurance. The first policy contained a covenant for its extension from year to year. It was understood that the renewal receipts were given pursuant to the covenant to continue or extend the original contract. It was accordingly held that the payment of the premiums and the acceptance of the receipts did not give rise to a new contract. The second policy, on the contrary, did not contain any covenant for its extension from year to year, but provided that the insurance should continue for the term of one year from its date and no longer. In holding that each renewal was a new contract, Chief Judge Alvey said:

> "The renewal receipts attached are all in the same form, and refer to the policy by number, and declare on their face that the insurance was thereby continued in force for the ensuing year. * * * The receipts must be taken as evidence of new parol contracts for insurance, made with reference to the pre-existing policy, and subject to the terms and conditions therein contained. Such receipts are both contracts and receipts; and so far as they are treated as contracts, they are regarded as having been made upon the same consideration and representation as

the original contract, embraced in the policy referred to; and wherever any changes are intended to be made in the terms or conditions of the original contract, such changes should be expressed in the renewal receipt."

As life insurance is usually considered a continuing contract for the life of the insured, questions relating to renewals do not ordinarily arise in connection with life insurance policies. But health and accident policies usually state exactly the duration of the risk assumed by the insurer. Moreover, it is now generally the practice of insurance companies to indicate in health and accident policies that they do not intend to be bound beyond the specified period and that renewal is entirely optional with them. Such policies are generally regarded as a species of term insurance not renewable except with the consent of the insurer.

We adopt the generally accepted rule that where a health and accident insurance policy provides that its term shall end on the date when any renewal premium is due, and payment by the insured of the renewal premium and acceptance of it by the insurer are required to keep the policy in continuous force and effect, and acceptance of the premium is optional with the insurer, the insured has no contract right to a renewal of the policy and cannot renew it except with the assent of the insurer. *Hall v. Provident Life & Accident Insurance Co.,* 48 Ga. App. 359, 172 S. E. 721; *Prescott v. Mutual Benefit Health & Accident Ass'n,* 133 Fla. 510, 183 So. 311, 119 A. L. R. 525; *American National Insurance Co. v. Ball,* Tex. Civ. App., 218 S. W. 71; 13 *Appleman, Insurance Law and Practice,* sec. 7642.

In *Perkins v. Associated Indemnity Corporation,* 189 Wash. 8, 63 P. 2d 499, 501, where a twelve-month accident insurance policy provided that it could be renewed from term to term "with the consent of the Company, and by the payment of the premium in advance," the Supreme Court of the State of Washington held that the policy terminated at the expiration of the period for which the premium had been paid, since the premium for an additional term of twelve

months had not been paid before the expiration of the period during which the policy was effective. Chief Justice Millard, speaking for the Court, said in that case:

> "Prior to the expiration of the policy, the respondent refused to accept a renewal premium. The argument that the respondent could not refuse to renew the policy if the insured offered to pay the annual premium and could only cancel the contract by notice to the insured is without merit. It should be borne in mind that policies of insurance such as the one in the case at bar can be written for only a specified term. The statute requires that the time at which the insurance thereunder takes effect and terminates be stated in a portion of the policy preceding its execution by the insurer. * * * This is quite the opposite of the statutory provisions respecting life insurance. * * * Under an ordinary life insurance policy, the insurer would not have the right to reject timely payments of premiums. The very opposite is the case in benefit, health, and accident policies. * * * When a policy provides for its termination at a particular time like the one in the case at bar, it terminates at that time without any notice. * * * It is optional with the insurer under the provisions of a contract like the one in the case at bar whether the policy will be periodically renewed upon each successive expiration."

The policy now before us does not itself set forth the length of the original term or the term of any renewal. However, it does provide that the policyholder's last premium receipt shall state when the renewal premium is due, and that acknowledged acceptance of payment of the premium shall renew the policy for "such term as the payment shall cover."

There are some health and accident insurance policies which provide both (1) that the insurer has the right to cancel the policy at any time by returning the unearned premium, and (2) that the insurer has the option of accepting

or refusing renewal premiums. In such a case there could not be any question whatever that the insurer could cancel the policy at the end of the term by refusing to accept the renewal premium. *National Life & Accident Insurance Co. v. Chastain,* 46 Ga. App. 842, 169 S. E. 380.

In the present case we have a policy which contains a non-cancellable provision. But the policy also provides that renewal premiums must be mailed in sufficient time to reach the Home Office on or before 12 o'clock noon of the date when due, which payment upon acknowledged acceptance by the company, shall renew the policy for such term as the payment shall cover. Thus, by unequivocal language, the policy makes it unmistakably plain that a renewal, like the original contract, will not be in force until the premium "has been actually received, accepted, and acknowledged at the Home Office." Accordingly the policy clearly evidences a contract of term insurance which the insurer cannot cancel during any period for which the premium has been paid, but can terminate at any date when renewal is due.

There is some similarity between the policy in this case and the policy in *Mutual Benefit Health & Accident Ass'n v. Caver,* 169 Miss. 554, 152 So. 897, 898. In that case there was attached to the policy a rider, somewhat similar to the non-cancellable provision, stating that the insurer could not cancel the policy during any period for which the policy had been paid. In that policy, however, there was a clause providing that acceptance of any premium would be optional with the insurer. It was therefore held by the Supreme Court of Mississippi that the insurer had the right to terminate the policy by declining to accept the premium on any premium date. In support of that decision, Presiding Justice Ethridge commented as follows:

> "It will be noted from the quoted clauses from the policy that the insurance company reserved the right to decline to accept any premium on any premium date. The rider merely provides that the insurance policy could not be cancelled for any period for which the premium was paid. Its language does not

> purport to compel the insurance company to receive premiums at the due date. It is not entirely inconsistent with the terms of the policy to give the insurance company the option to receive any premium."

We also hold that the insurer in this case cannot be prevented by the doctrine of estoppel from refusing to renew the policy. To hold that the insurer is estopped from terminating the policy would ignore the explicit language of the policy. Where an insurer seasonably exercises an option to terminate a health and accident policy, the policyholder cannot invoke the doctrine of estoppel merely because the insurer did not choose to exercise the option before the close of some previous term.

As the insurer had the right to refuse to renew the policy for another term, the decree of the chancellor declaring the policy to be in full force and effect must be reversed.

*Decree reversed and bill of complaint dismissed, with costs.*