**AMERICAN BANKERS INS. CO. OF FLORIDA, Appellant,**

v.

**Frank CARPENTER, Appellee.**

**No. 7003.**

Court of Civil Appeals of Texas.

Amarillo.

Dec. 19, 1960.

Rehearing Denied Jan. 16, 1961.

Simpson, Adkins, Fullingim & Hankins, Amarillo, for appellant, Wayne Sturdivant, Amarillo, of counsel.

Lovell & Lyle, Dumas, for appellee.

NORTHCUTT, Justice.

On June 16, 1959, Frank Carpenter, as plaintiff, hereinafter referred to as appellee, brought suit against American Bankers Ins. Co. of Florida, hereinafter referred to as appellant, seeking to recover upon an insurance policy in the amount of $2,000. Appellee pleaded that appellant, prior to February 9, 1959, issued a policy of insurance to the appellee against all loss or damages to appellee's house boat. Appellee further pleaded that appellant accepted its premium for the insurance of said policy. The boat in question was damaged on February 9, 1959. There was no question about the amount of damages as it was agreed that if appellee was liable on appellant's policy, it owed the amount of the policy, $2,000.

Appellant answered contending the policy was never accepted by appellee and that the coverage never attached and further that said policy did not conform to the application but was a mere counter offer by appellant which was never accepted by appellee, therefore, no liability ever attached under the terms of the policy.

The case was tried to the court without a jury. The trial court found that the

facts and the law were with the appellee and that appellee accepted the policy of insurance, and that the policy was a completed and binding contract between the parties and rendered judgment for the appellee. It is from that judgment that appellant perfected this appeal.

Since there is no dispute as to the amount of damages to the boat, we are of the opinion that the sole question to be determined is whether there was a completed and binding contract of insurance between the parties insuring appellee's boat at the time the boat was damaged or destroyed. When appellee purchased the boat in October, 1957, he secured a loan from the Sunray State Bank and secured the loan by lien upon the boat in question. At the same time of making the loan, Mr. Bedwell, who is with the Sunray State Bank, sold appellee a policy of insurance covering damages to the boat. Some six or seven months later appellee learned the policy did not cover damages to the boat if the boat was rented, and he went to the bank and cancelled the policy.

The appellee realized it was hard to find an insurance company that would issue a policy covering the boat while it was leased or rented to some other party. So he contacted a Mr. Williams, an insurance man at Dumas, who called Percy Holt & Company at Houston, Texas over the telephone. Appellee did not hear the telephone conversation, but Mr. Williams informed him that according to his conversation with the man in Houston it was what appellee wanted. Appellee requested Williams to write the man in Houston and tell him appellee wanted the insurance. On July 16, 1958, appellant executed its policy of insurance covering the boat in question and sent the original policy to the Sunray State Bank and the copy to appellee. This policy had the same exceptions as the policy issued by Mr. Bedwell and did not cover the boat when rented to some other person.

After receiving the policy, appellee, discovered it was not the policy he wanted because it did not cover the boat when rented. After receiving the policy he "spotted it right away" that it was not what he wanted. He talked to Mr. Williams about the matter and Mr. Williams stated he would write to Percy Holt & Company and see about it. After Mr. Williams had written two letters to Percy Holt & Company and did not receive a reply, appellee decided he would write a letter to Percy Holt & Company and in this connection testified as follows:

"A. Well, I don't remember how long, but anyway, a while later I came back into Mr. Williams' office and we discussed the situation again and he said well, I haven't heard from him and I said I hadn't either.

"So Mr. Williams told me he wrote to him again about the same thing and the same subject and so we waited what I thought was an unreasonable length of time to hear from him and we didn't, so I told Mr. Williams, I said, 'I am going to write him a letter myself.'

"So I wrote him a pretty sharp, terse letter about the situation and I got a reply from him.

"Q. What did you say in the letter you wrote to Percy Holt & Co.? A. Well, I told him if he couldn't correct that situation or supply us an endorsement or something to that effect that I was going to send the policy in for cancellation.

"Q. All right. A. And I got a letter from him and he said—he apologized for being so late about replying to our correspondence, and that he couldn't correct it or couldn't do anything more about it or something to that effect.

"So then when I got that letter, I went over to the bank and picked up the original policy and explained to Mr. Bedwell over there that I was go-

ing to mail it in for cancellation and keep ahunting for insurance to suit my purpose.

"Well, now, we are getting up to the crucial point.

"On the 9th day of February, 1959, I prepared the policies and mailed them.

"Q. Now, Defendant's Exhibit No. 4 is a letter you sent, or note that you sent with a policy, and Defendant's Exhibit 4–A is the envelop post-marked February the 9th, 1959, Cactus, Texas? A. Yes.

"Q. And that is what you sent the policy back with? A. Yes.

"Q. That is it? A. Yes."

The letter from appellee stated "If it is impossible to exclude section '(e)' we are returning this policy. We appreciate your efforts in trying to help us." The following questions were asked and appellee answered as follows:

"Q. Let me ask you this now. Did you ever pay any premiums on this policy? A. No.

"Q. And have not yet? A. No.

"Q. Now, Mr. Carpenter, this is rather important.

"You did not pick up the original of the policy until you were ready to mail it back, is that correct? A. That is correct.

"Q. The same day? A. After I received the letter from Percy Holt & Co., telling me that it would be impossible for him to change this or give us the endorsement or exclude this section of the policy, I, of course, I don't think I made a special trip to the bank for the original or anything.

"Well, after I found that out, of course, I was inquiring around about insurance from first one and then another, about the type of insurance that I wanted.

"I didn't particularly get in any rush about mailing this policy in, but I did, I suppose, the first time that I was at the bank I picked up the policy and brought it back home and it was probably there a day or two before I got around to mailing it.

"Q. You picked it up with the intent of mailing it back though? A. Yes. I had wrote him a letter sometime, possibly two weeks before that telling him that I was going to cancel it out if, you know, they couldn't do anything about that (e) section of the policy.

"Q. And you never did intend to keep this policy with that clause '(e)' in it? A. Well, after I found out that that was in there, no, unless they could correct it, I didn't intend to keep it.

"Q. When you first got it, you knew that you did not want that policy with that (e) in there because that is exactly the reason you bought it from the American Bankers? A. That's right.

"Q. And as far as you were concerned, when they put that (e) in there, that wasn't what you had contracted for? A. Well, I didn't think it was and, actually, with that exclusion in there with the business I was in, the policy was actually worthless to me.

"Q. You didn't want it? A. No.

"Q. Not with that clause in it? A. No.

"Q. And you never did agree to accept it? A. Well, yes, I agreed to accept the policy and that we wrote the man a letter and told him to put the policy in force.

"Q. If they would take that (e) clause out? A. Well, he had already

told Mr. Williams that it would cover this particular point, and Mr. Williams tells me that he asked the man twice on the telephone—incidentally, that telephone call to Houston was pretty expensive, too—and he asked twice about that particular point in his insurance policy, just to be sure that we had the right one.

"Q. But the point I am getting at, you never did want this policy with this exclusion in it? A. Well, no.

"Q. And you never did actually accept this policy with that exclusion in it because it wasn't what you had contracted for, was it? A. Well, no—put it that way."

Insurance policies are contracts governed by the same rules as other contracts. First Texas Prudential Ins. Co. v. Ryan et al., 125 Tex. 377, 82 S.W.2d 635. It is necessary to establish mutual assent to the substantial terms of an alleged insurance agreement by one who asserts that an enforceable contract was entered into; also an offer and acceptance must be shown. 24–B Tex.Jur., Sec. 5, Page 27. Brownwood Benev. Ass'n v. Maness, Tex. Civ.App., 30 S.W.2d 1114.

It is stated in the case of Trinity Universal Ins. Co. v. Rogers et al., Tex.Civ. App., 215 S.W.2d 349, 352, as follows:

"In this connection attention is also called to the following authorities: The renewal of a policy is a new contract of insurance and 'cannot be effected or consummated without the mutual assent of the parties; i. e., a meeting of the minds as to the essentials of the contract.' Redeman v. Preferred Accident Ins. Co. of New York, 215 Wis. 321, 254 N.W. 515, 518. Any offer by the insurer to renew an insurance contract must be accepted by the insured completely and unequivocally to constitute a new contract. Metzger v. Aetna Ins. Co., 229 App. Div. 26, 240 N.Y.S. 755; City Mortgage & Discount Co. v. Palatine Ins. Co., Ltd., 226 Ala. 179, 145 So. 490; Frank v. Metropolitan Life Ins. Co., 227 Wis. 613, 277 N.W. 643, etc. It is held that where an insurance company proposed by letter to renew a policy, and the insured retains the policy but does not reply to the letter or pay the premium or indicate an acceptance until after a fire several months thereafter, there is no completed contract of insurance. W. P. Harper & Co. v. Ginners Mutual Ins. Co., 6 Ga.App. 139, 64 S.E. 567; Richmond v. Travelers' Ins. Co., 123 Tenn. 307, 130 S.W. 790, 30 L.R.A.,N.S., 954; Pennsylvania Fire Ins. Co. v. Sorrells, 23 Ga.App. 398, 98 S.E. 358. An insurance policy is a contract, and the fundamental law of contracts requires that an offer be accepted before a contract arises."

See also Houston Fire & Casualty Ins. Co. v. Pritchard & Abbott et al., 155 Tex. 120, 283 S.W.2d 728.

It was held in the case of Pan American Ins. Co. v. Lumbermen's Lloyds, Tex. Civ.App., 280 S.W.2d 309, 311 (writ refused N. R. E.) as follows:

"The policy was returned by the insured because some of the insurance policies issued at the same time and under its application agreement contained a rider to which the insured had not agreed. The insured had a right to reject the policies of insurance where one of them contained a clause to which appellee had not agreed. Appellee was not liable by reason of the issuance of the policies when they were not accepted by the insured and were returned as unsatisfactory and no premium was ever paid on the same.

44 C.J.S. Insurance § 264, p. 1054; Vol. 12, Appleman on Insurance, Section 7151, Page 202. The policy was also cancelled as a matter of law irrespective of the provision therein as to ten days notice of cancellation. 'A tender of the policy to the company with a statement that it is not the policy contracted for is sufficient to cancel it.' 45 C.J.S. Insurance § 458, p. 119; Glover v. Employers' Liability Assur. Corporation, Tex.Civ.App., 80 S.W.2d 1078, Syl. 2–3; Automobile Ins. Co. of Hartford, Conn. v. Southern Transp. Co., Tex.Civ.App., 101 S.W.2d 585."

■ When appellee wrote Percy Holt & Co. telling them unless they would correct the situation or supply him with an endorsement he was going to send the policy in for cancellation, Percy Holt & Co. wrote back they couldn't change the policy. Then appellee picked up the policy from the Sunray Bank to mail it back to appellant. This together with all other testimony of appellee that he did not want the policy unless it covered the boat while being rented and not paying any of the premium and mailing the policy in accordance with his letter above stated and all of this being done before appellee knew the boat was damaged, we think clearly shows the policy was never accepted.

We are of the opinion under this record that appellee never at any time intended to accept the policy in question unless appellant would agree to eliminate section (e) which provided the boat was not covered when the boat was hired to another person. We hold there was never a completed and binding contract of insurance between the parties insuring appellee's boat at the time the boat was damaged or destroyed. Judgment of the trial court is reversed and rendered that appellee recover nothing as against the appellant.