## COMMERCIAL CASUALTY INSURANCE COMPANY *v.* WEBB

[No. 156, October Term, 1955.]

*Decided April 11, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Herbert L. Grymes* and *Hamilton P. Fox, Jr.,* with whom were *Hearne, Fox & Bailey* on the brief, for the appellant.

*William W. Travers* and *John W. T. Webb,* with whom were *Webb, Bounds & Travers* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

We are called upon in this case to construe an accident and health insurance policy issued for the term of one year and renewable from term to term at the option of the in-

sured, which pays $50.00 a week during disability from any one accident or from the same sickness. The appeal is by the insurance company from a declaratory summary judgment: (a) that the policy, truly construed, requires the company to continue to pay the weekly benefits as long as disability from the same sickness continues if the insured renews from term to term, although the policy contains the limitation that such disability payments will not be continued for longer than fifty-two weeks; and (b) for the sums due and presently unpaid, and to become due, under that reading of the policy. The theory of the appellee, adopted by the lower court was that each renewal creates a new term, and continuance of the disability during that term causes a new maximum period of fifty-two weeks to begin during that term.

In 1947 the Maryland State Bar Association made arrangements to afford its members the benefits of group accident and health insurance. On February 24, 1947, the appellee, a well known member of the Bar, made written application for a policy which was issued to him on April 1, 1947. There is a recital of the coverage of the policy in large type at the top of the first page as follows: "This Policy Provides Indemnity for Loss of Life, Limb, Sight, Speech, Hearing or Time caused by Accidental Bodily Injury, and for Loss of Time by Sickness to the extent herein provided." At the bottom of the first page, in similar large type, is recited: "This Policy Does Not Cover the First Seven Days of Sickness Disability." The policy at its beginning provides that: "In consideration of the statements in the Application for this Policy, a copy of which is attached and made a part hereof" and the payment of the premium, the company insures the appellee "from 12 o'clock noon * * * on the day this contract is countersigned, and for such time thereafter as the premiums paid by the Insured, as herein agreed, shall maintain this policy in force."

The protection afforded and benefits granted are defined in the insuring clause: "This policy insures against—(1) loss or disability resulting * * * from accidental Bodily injury sustained during the life of this policy * * * said bodily

injury being hereinafter referred to as 'such injury' and (2) disability sustained during the life of this policy, resulting from sickness, hereinafter referred to as 'such sickness'. The Principal Sum of this Policy is $5000.00. The Weekly Indemnity is $50.00."

The principal sum is payable for loss of life and loss of specified members of the body. The weekly indemnity is payable under Part II of the policy if "such injury shall wholly and continuously disable and prevent the Insured from performing any and every duty pertaining to his or her occupation * * *", and under Part III, "If such sickness shall wholly and continuously disable and prevent the Insured from performing any and every duty pertaining to his or her occupation * * * but for a period not exceeding fifty two weeks of disability for any one sickness." There is a provision for the payment of medical treatment of minor injuries, and other stated benefits.

The policy in its body provides: "This policy may be renewed subject to all its provisions from term to term, only with the consent of the Company, and by the payment of the annual premium * * *." By a rider of even date with the policy, the company may decline to renew the policy on the following grounds only: "A. Non-payment of premium. B. When the insured becomes seventy years of age. C. If the insured retires or ceases to be actively engaged in the LEGAL profession. D. If the insured ceases to be an active member of the Maryland State Bar Association." The rider further provides that "Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated." By another rider of even date with the policy, the weekly indemnity for total loss of time from accidental injury is extended "from the original limit of Fifty-Two Weeks, to a maximum limit of Five Years for any one Accident." The weekly sickness indemnity for total loss of time, which ran from the eighth day of disability under the policy, was extended by the rider to run from that day "or from the First Day of Hospital

Confinement; whichever shall occur first." This rider has this further proviso: "These extended benefits apply only to disability commencing on or after the countersignature date of this rider. Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated."

There is no dispute as to the facts. About November 26, 1953, during a renewal term of the policy, the insured was stricken with hypertrophic arthritis and since has been wholly and continuously disabled within the meaning of the policy. The disability which afflicts the appellee continuously has been and now is the result of the arthritis that began in November, 1953. The appellee has not retired from the legal profession nor ceased to be an active member of the Maryland State Bar Association. He is less than seventy years of age and has paid the original premiums on the policy and all renewal premiums, save that due in 1955. By then the company had paid him $2,600.00—$50 a week for fifty-two continuous weeks—and would not accept the premium because the appellee tendered it on the basis that its acceptance meant that the insurer agreed that he was entitled to weekly sickness benefits as long as he continued the policy in force by renewals, and remained disabled.

The lower court found the language in the body of the policy limiting the right to benefits for disability from any one sickness to a maximum period of fifty-two weeks, to be clear, concise and unambiguous, and sufficient if read alone, to deny the insured payment for more than fifty-two weeks. He concluded, however, that the riders caused an ambiguity in the meaning of the policy "for they seemingly contradict the limitation provision heretofore mentioned by stating that the policy may be renewed from 'term to term' upon the payment of the annual premium specified. The latter provision states that the policy may be cancelled for certain specific and different reasons, none of which exist in this case. It does not by clear and concise language, limit the benefits to be derived during the renewal period. Because of this ambigu-

ity, the Court feels constrained to hold that the policy is from 'term to term' and the limitations set forth is for each term only, rather than the total liability which may be created thereunder."

We think the lower court attributed to the words of the riders a meaning and effect they do not have. The policy clearly and precisely insures the appellee from 12 noon on April 1, 1947, against disability resulting from accidental injury thereafter occurring and disabling sickness thereafter contracted. The appellee does not contend that the insurer agreed to insure against an injury already incurred or a sickness in existence when the policy first went into effect and the policy provisions make it plain that they did not. The statements in the application are a consideration for the issuance of the policy and are made a part of it. In the application the appellee stated that he was in sound condition, mentally and physically, and agreed that the policy applied for would not go into effect unless he was regularly attending to all of the usual duties of his occupation "on the countersignature date of the policy." The disability covered by the policy is only that resulting from an accidental bodily injury "sustained during the life of this policy." The disabling sickness against which protection is given is that "sustained during the life of this policy." The extended benefits given by the rider "apply only to disability commencing on or after the countersignature date of this rider." Provision No. 3 of the standard provisions of the policy states that if there is a default in payment of premium, the subsequent acceptance of a premium by the insurer shall reinstate the policy "but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

To have entitled the assured to weekly benefits during the first term of the policy, the injury or sickness causing the disability would have to have happened or come about during that first year. If such injury or such sickness did occur during the first term of the policy, whether in the first or the last minute, the insurer would be obligated to pay the stipu-

lated weekly benefits during the continuance of the disability for the number of weeks specified. Thus, if an injury resulting in disability occurred during the first term, under the rider the company would have to pay up to two hundred sixty weeks, regardless of whether the insured exercised his option to renew the policy or not. Similarly there is no doubt that a disabling sickness sustained during the first term would call for payments during the disability, with a limit of fifty-two weeks, whether or not the insured renewed the policy. The occurrence of the injury or disabling sickness during the term of the policy is the event which calls into play the liability of the insurer, and this liability continues during disability for the number of weeks specified, but this number is not decreased or increased as to any one injury or the same sickness by buying protection against another injury or sickness that may occur during the new term. Part VIII of the policy says: "The Insured shall not be entitled to indemnity for two disabilities at one and the same time, resulting respectively from sickness and accident." Part II, as has been noted, limits liability for disability from injury "for any one accident", and Part III limits disability from sickness to that from "any one sickness". At any given time, an insured can receive benefits of but $50 weekly, and if they are for disability from sickness, only for fifty-two weeks. A new disabling sickness would have to be suffered to start a new right to payments with a new maximum of fifty-two weeks.

So plain is it that the insurer did not agree to insure against an injury or illness existent when the policy went into effect that it would require compelling language, which we do not find, to lead us to conclude that by offering the insured the right to renew the policy from year to year, the insurance company agreed to insure against an injury or illness from which the insured was disabled at the beginning of the second, the third or any subsequent term. Yet, this would follow if the appellee is right in his argument. There is nothing in the riders that leads to such a result. The rider which makes the policy non-cancellable by the company, except on the four grounds which are not present here, says that upon payment

of the premium, the company will "continue this policy in full force and effect." Whether or not the policy has expired has no effect on the liability of the company to pay, within the policy limits, for disability from accident or illness which occurred during the time it was in effect. Further, the rider goes on to say that nothing contained therein "shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations" of the policy. The right given the assured to renew the policy at his will is, according to the terms of the policy itself, "subject to all its provisions from term to term." We take this clearly to mean that in any term the insured is protected exactly as he was during the first term, that is, from injury or sickness occurring during that term and producing disability. The liability to pay as to any accident or illness occurring during any term is measured from the time of occurrence. The right to renew an accident and health policy at the option of the insured, with no right in the company to refuse, is a valuable right because many policies provide that after age fifty-five or sixty, the benefits are cancelled or substantially reduced, and without it the insurer may refuse to renew where the insured has been prone to suffer accidental injury or has shown susceptibility to illness. Even though an insured were disabled at the expiration of the term, and entitled to continue to receive benefits according to the provisions of the policy, he would, by renewal, receive additional rights. For example, in the case before us, renewal by the insured gave him the right to death and disability benefits from accident, or illness other than that for which he was being paid, sustained during the succeeding twelve months, indemnity for medical treatment and other indemnities and privileges set out in the policy. A renewal would not, however, entitle him to more than that to which he was entitled at the time of renewal for injury or illness which had previously occurred.

The appellee attempts to overcome the effect of the purposes and provisions of the policy by the argument that the payment of each additional yearly premium created a new contract between him and the company and that the disability

from which he is suffering was sustained during the renewal term in that he endured or was subject to that disability during the new term.

This amounts to a claim that the insurer agreed to indemnify against permanent disability from illness. The policy and the riders, read together, show that it made no such agreement. The word "sustained" is used in the insuring clause, not in the sense of continuing or being endured by the insured during the term of the policy, but as meaning a single, identifiable physical disturbance either traumatic or pathological. If it is traumatic, the coverage is against disability resulting directly and independently from an "accidental Bodily injury sustained during the life of this policy". The accident is the trigger that sets up liability. How long it continues is measured by the resulting disability and the policy limitation as to any one accident. The same is true of sickness disability. The attack of sickness during a term sets up liability and the disability from that same sickness—"such sickness"—is paid for as long as it lasts for the maximum number of weeks promised by the insurer. The concept argued for by the insured, that is, that continuance of disability into any term beginning after the term in which the disabling illness commenced is an event establishing afresh the right to a new series of benefits, confuses the establishment of liability with its duration. There can be but one series of weekly indemnities for each accident or each illness and the number of weeks is spelled out and limited for each. The body of the policy says the company will pay for only fifty-two weeks of sickness disability. The rider makes the accident disability limit two hundred sixty weeks—not as long as it lasts. The sickness disability limit remains at fifty-two weeks. The policy gives the right to renew, if the company agrees, "subject to all its provisions from term to term." The rider changes nothing except the company's option to decline to renew or not, as it pleases. If the insured were right in his contention, mere continuance of accident disability into a new term and payment of the $72 annual premiums would entitle him to an additional two

hundred sixty weekly payments—a total of $13,000, although the risk insured against, the accidental bodily injury, did not attach during that term as the policy distinctly and unambiguously provides it must, if there is to be liability. There is nothing in the policy and the riders to distinguish the policy agreements as to sickness disability from those for accident disability, insofar as the attaching of the risk and the establishment of liability are concerned.

Whether each renewal of the policy be considered (1) a new contract that keeps in force a pre-existing policy, or (2) as making the original contract, plus each exercise of the option to renew, the equivalent to a contract for the aggregate of the original and renewal terms, or (3) as the making of a new contract of insurance as has been variously determined by various Courts, is of no moment. To reiterate what we have heretofore reiterated, the significant and controlling point is that, under any theory, the test is whether the risk attaches during the current premium period. If it does because of an accident or illness which then occurs, with resulting disability, the liability is established and its duration is to be measured from the point of establishment. The duration of the liability remains unchanged whether payments are required to be made after the policy has expired or during a renewal term. The effect of the renewal is merely to create potential liability for an accident or illness which occurs during that term—not to extend liability for what happened in a prior term.

Courts have reached similar conclusions under analogous circumstances. In *U. S. Fidelity & Guaranty Co. v. Crown Cork & Seal Co.,* 145 Md. 513, there was a fidelity bond under which the insurer agreed to indemnify the insured against fraudulent conduct of named employees. The bond ran from June first of one year to June first of the following year, and the coverage of each named employee was between specified dates, up to specified amounts. An employee of the insured embezzled some $13,000 between May, 1921 and March, 1922, during which period the maximum coverage on him was $25,000. He embezzled $14,000 after March 1, 1922

during the same policy year, when the limit was $10,000. The company paid the $13,000 but refused to make any further payments. It was held that the company was liable in each period of indemnity for defalcations occurring in that period, so that it must pay not only for the first embezzlement but for that occurring after March 1, 1922, up to $10,000. Courts of other states have reached the same opinion on accident and health policies, similar to that before us. *Paleias v. Equitable,* 42 N. Y. S. 2d 698; *Jacobson v. Equitable,* 42 N. Y. S. 2d 696; *Ginsburg v. Equitable,* 5 N. Y. S. 2d 16, read together make it clear that under the law of that State, the policy before us would be read as we read it. See also *Whitney v. Travelers* (Ill. App.), 24 N. E. 2d 208; *Quillian v. Equitable* (Ga. App.), 6 S. E. 2d 108.

The appellee makes the further point that in any event the policy must be construed as he contends because the company is estopped to deny this to be the true construction. Relied on is a letter from an agent of the insurer to the appellee, saying that he had spoken of the plan to the appellee several weeks before and adding: "I would certainly appreciate anything you could do to help me put this plan over in your locality. * * *

"On most accident and health plans, the benefits are reduced or cancelled from age 55 to 60. This gives full coverage to age 70." It is argued that the term "full coverage" means that the company will pay for disability as long as it lasts, provided that the insured renews the policy from term to term. We see nothing to justify such an interpretation of the letter. The policy gives the same full coverage, according to its provisions and limitations for each year of age, up to age seventy, as for any other year, and the statement in the letter is thus accurate. The extent of the coverage is not attempted to be explained in the letter. It is to be noted also that the letter was dated February 25, 1947, that the insured made out his application on the day before, February 24, and that in his reply the following day, February 26, the insured advises the agent: "* * * I have already entered the plan * * *." There is nothing to show that the letter, even if

it were misleading, which we do not find, induced the insured to take the policy.

The views we have expressed as to the meaning of the policy require the judgment below to be reversed.

*Judgment reversed, with costs.*