Alvin WALL, Plaintiff and Appellant,

v.

PENNSYLVANIA LIFE INSURANCE COMPANY, Defendant and Appellee.

Civ. 9504.

Supreme Court of North Dakota.

Jan. 8, 1979.

Rehearing Denied Feb. 1, 1979.

Zuger & Bucklin, Bismarck, for plaintiff and appellant; argued by Robert V. Bolinske, Bismarck.

Pearce, Anderson, Thames & Durick, Bismarck, for defendant and appellee; argued by Patrick W. Durick, Bismarck.

PAULSON, Justice.

The appellant, Alvin Wall [hereinafter Wall] appeals from the judgment of the Burleigh County District Court entered in favor of the appellee, Pennsylvania Life Insurance Company [hereinafter Penn. Life], in Wall's action to obtain disability benefits under a health and accident insurance policy that he had purchased from Penn. Life. Following the trial the case was submitted to a jury of six by way of a Special Verdict form that required the jury to answer seventeen special interrogatories. The jury answered all of the interrogatories in Wall's favor and judgment was ordered for Wall. Penn. Life then moved for a judgment notwithstanding the verdict, or, in the alternative, for a new trial. The district court granted Penn. Life's motion for a judgment notwithstanding the verdict and Wall has appealed. We reverse.

In the fall of 1971, Arden Hoff [hereinafter Hoff], an insurance salesman for Penn. Life, called on Wall at his farm near Mercer and attempted to sell him a "Lifetime Disability Income Plan". Hoff showed Wall and his wife a sales brochure which indicated that the plan "PAYS $300 PER MONTH when you are SICK as long. as total disability . . . continues from SICKNESS . . . PAYS $300 PER MONTH when you are HURT as long as total disability, total loss of time and regular medical attention continue from ACCIDENT . . . PAYS $900 PER MONTH when in the HOSPITAL . . .

for as long as THREE MONTHS . .." Although Wall did not purchase a policy at that time, Hoff returned to Wall's farm on November 4, 1971 and sold him a "Lifetime Disability Income Plan" [hereinafter policy]. Wall paid the $351.00 yearly premium at that time.

Wall, who is 57 years old, has had no formal education beyond the seventh grade. Because his reading and writing skills are not well developed, Wall's wife has taken care of his bookkeeping and correspondence since they were married. When Hoff sold Wall the policy he asked Mr. and Mrs. Wall the questions listed on the policy application form and filled in their answers. Wall then signed the application. Hoff refused to leave a copy of the policy with Wall at that time and the policy was not delivered to Wall until nine weeks later.

On approximately May 23, 1972, while the policy was in effect, Wall injured his back doing farm work. At the time he was engaged in the strenuous process of seeding his crops and he was working long hours because many of his cows had recently calved. The most strenuous part of the seeding operation involves loading the seed drill. In loading the seed drill Wall had to climb up two and one-half feet onto the seed drill's platform carrying sixty-pound bags of seed and fifty-pound bags of fertilizer, lift the bags up an additional eighteen inches and then dump the bags into the seed and fertilizer boxes. A single loading of the drill required twenty-eight sixty-pound bags of seed and ten fifty-pound bags of fertilizer. During a full day of planting Wall would have to load the drill four or five times.

At trial, Wall described the drill-loading procedure in detail. He testified that he lifted the bags from storage on the ground and loaded them onto a trailer, drove the trailer to the field, lifted a bag or two from the trailer, climbed two and one-half feet onto the drill platform and then emptied the bags into the boxes.

Although Wall does not recall a specific lift or twist that caused him to injure his back, he does remember pain beginning while he was riding his powerful Steiger four-wheel drive tractor. The longer he rode the tractor and continued to seed, the worse the pain in his back became.

Despite the pain of his back injury, Wall continued to work for approximately one week until he was hospitalized on May 30, 1972. He testified that he continued to work after injuring his back because he had to get his crops in and he had no one else to help him.

On June 5, Dr. Ralph Vinje performed back surgery on Wall who was suffering from a herniated intervertebral disc. Wall has been totally disabled since May 30, 1972, and has not been able to operate his farm or find employment in any other occupation.

On approximately July 13, Wall filed a claim for disability benefits with Penn. Life. For several months Wall heard nothing from Penn. Life regarding his claim. Wall then received letters from Penn. Life on October 11 and November 1 which indicated that his claim was still being investigated.

During the fall of 1972, a Penn. Life agent went to Wall's farm to collect the renewal premium on the policy which was due on November 4, 1972. Wall refused to pay the premium because he was upset that no action had been taken on his claim for benefits which had been filed in July. The agent told Wall that the company was working on the claim and he told Mrs. Wall that Wall should pay the premium because the company would take care of the claim that had been filed.

When Wall failed to pay the renewal premium on November 4, the policy apparently was terminated. Under the terms of the policy the thirty-one day "grace period" which allows premiums to be paid up to thirty-one days late, does not apply to the first renewal premium.[1] On November 16, twelve days after the policy had allegedly

1. This provision appears to conflict with § 26–03.1–03(1)(c), N.D.C.C., which requires that a grace period be given for "each premium falling due after the first premium".

terminated when Wall failed to pay the renewal premium, Penn. Life wrote Wall and notified him that his claim for benefits had been denied.

Wall commenced this action against Penn. Life for benefits under the policy on July 13, 1976. The trial began on January 10, 1978. At the close of Wall's case, Penn. Life made a motion for a directed verdict which the trial court denied. On January 13, the jury answered seventeen special interrogatories in Wall's favor and returned a verdict for Wall in the amount of $23,902.40 plus costs. Judgment was entered for Wall on February 2.

Penn. Life subsequently moved for a judgment notwithstanding the verdict, or, in the alternative, for a new trial. On March 6, a hearing on the motion was held. The district court granted Penn. Life's motion for judgment notwithstanding the verdict, or, in the event that the judgment notwithstanding the verdict was reversed on appeal, a new trial. Judgment was entered for Penn. Life on May 15 and Wall appealed to this court on May 30, 1978.

The following issues are raised on appeal:

1.  Was Wall's cause of action barred by the Statute of Limitations?
2.  Did the trial court err in reversing the jury's verdict for Wall and granting a judgment notwithstanding the verdict for Penn. Life thereby denying coverage under the policy?
    (a) Did Wall fail to prove, as a matter of law, that his injury was caused by an accident?
    (b) Did the policy lapse because Wall failed to pay the first renewal premium on November 4, 1972?
3.  Did the trial court err in granting Penn. Life's alternative motion for a new trial in the event that its judgment notwithstanding the verdict was reversed on appeal?

Penn. Life, in its answer, motion for summary judgment, motion for directed verdict, and motion for a judgment notwithstanding the verdict, raised the defense that Wall's action was barred by the applicable Statute of Limitations. In deciding all three motions, the district court ruled that the Statute of Limitations did not bar Wall's action. We will now consider whether the court's rulings denying the applicability of the Statute of Limitations constituted error.

■ Section 26–03.1–03(1), N.D.C.C., requires that every accident and sickness insurance policy "delivered or issued for delivery to any person in this state shall contain the provisions specified in this subsection". Among the provisions that must be included in any accident and sickness policy are those that determine the applicable Statute of Limitations.

Section 26–03.1–03(1)(k), N.D.C.C., requires that the following provision be included in each sickness and accident policy:

"LEGAL ACTIONS: *No action at law or in equity shall be brought to recover on this policy* prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought *after the expiration of three years after the time written proof of loss is required to be furnished.* (Emphasis added.)"

This provision was included in the policy which Wall purchased from Penn. Life.

Section 26–03.1–03(1)(g), N.D.C.C., set forth below, in pertinent part, is also a required provision that was properly included in Wall's policy [2]:

"PROOFS OF LOSS: *Written proof of loss must be furnished to the insurer at its said office in case of a claim for loss for which the policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the insurer is liable* . . . . (Emphasis added.)"

■ Pursuant to Wall's policy and § 26–03.1–03(1)(k), N.D.C.C., no action under the

2.  The language in the policy is identical to the language in the statute except that the policy substitutes the word "Company" for the word "insurer" and the words "Executive Offices" for the word "office."

policy may be commenced later than "three years after the time written proof of loss is required to be furnished". Therefore, the Statute of Limitations under the policy begins to run on the last date on which written proof of loss may be filed.

In the present case written proof of loss was required to be furnished "within ninety days after the termination of the period for which the insurer is liable". Section 26–03.-1–03(1)(g), N.D.C.C. In order to decide whether the Statute of Limitations serves to bar Wall's action, we must determine the meaning of the above-listed phrase.

Penn. Life contends that "within ninety days after the termination of the period for which the insurer is liable" means that proof of loss must be furnished within ninety days after the end of the first benefit period for which Penn. Life may be liable. According to Penn. Life, because the policy requires it to pay accrued benefits every thirty days, the first benefit period on which it may be liable terminated on June 29, 1972, thirty days after the disability began. Therefore, Penn. Life contends that proof of loss had to be furnished by Wall no later than September 27, 1972, ninety days after the first benefit period terminated. Penn. Life further contends that the three year Statute of Limitations ran out on September 27, 1975, several months before Wall's action was commenced on July 13, 1976.

Wall, on the other hand, contends that the provision requires that proof of loss be furnished within ninety days after the termination of the *entire* period for which the insurer is liable, not within ninety days of the end of the first benefit period. Because Wall's disability has continued to the present, he contends that the period for which Penn. Life is liable has not yet ended. Therefore, according to Wall, he is not yet required to furnish proof of loss, the Statute of Limitations has not yet begun to run, and his suit is not barred by the Statute of Limitations.

■ We have not previously had occasion to construe the statutory language of the proof of loss provision, § 26–03.1–03(1)(g), N.D.C.C., which is at issue in the case. However, identical proof of loss statutes have been construed by the Minnesota Supreme Court and the Court of Appeals of Kentucky in *Laidlaw v. Commercial Ins. Co. of Newark*, 255 N.W.2d 807, 811 (Minn. 1977), and *Continental Casualty Company v. Freeman*, 481 S.W.2d 309, 311 (Ky.1972), respectively.[3]

The courts in both *Laidlaw, supra* 255 N.W.2d at 811–12, and *Continental, supra* 481 S.W.2d at 311–12, determined that "the period for which the company [insurer] is liable" means the aggregate period or total continuous period for which the policyholder claims the company is liable, not individual one-month periods during which benefits accrue. Both courts concluded that proof of loss must be furnished within ninety days of the period of total liability and that the Statute of Limitations does not begin to run until after the end of the ninety-day period.

In construing the proof of loss provisions, the Minnesota Court determined that the usual rules of construction of insurance policies did not apply. Because the policy provisions were required by statute, they would not be strictly construed against the insurer and in favor of the insured. *Laidlaw, supra* 255 N.W.2d at 811.

Sections 26–03.1–03(1)(g) and (1)(k), N.D.C.C., must be interpreted to give effect to their natural and ordinary meaning pursuant to §§ 1–02–02 and 1–02–03, N.D.C.C.

The district court relied on *Laidlaw, supra*, in determining that the "period for which the insurer is liable" phrase means

---

**3.** Penn. Life relied in its brief on *Platis v. American Casualty Company*, 466 F.2d 35 (10th Cir. 1972), which construed a similar proof of loss provision. The proof of loss provision in *Platis, supra* 466 F.2d at 36, however, required that proof of loss be furnished *within ninety days "after the date of such loss"* rather than *"after*

the termination of the period for which the insurer is liable"* as is required by our proof of loss statute. Because of the difference of language, we choose to rely on *Laidlaw, supra*, and *Continental, supra*, which involve statutes identical to ours.

the total period of liability in a continuous disability case and not a monthly period during which benefits accrue. Penn. Life's own provision authorizing monthly benefit payments does not alter the specific wording of § 26–03.1–03(1)(g), N.D.C.C., that proof of loss must be filed only after the insurer's liability terminates. The district court concluded that Wall's claim against Penn. Life was based upon continuing disability, Penn. Life's period of liability had not terminated, proof of loss was not yet required to be furnished and the Statute of Limitations had not begun to run.

We agree with the district court's rationale. In addition, the policy's time of payment of claims provision adds further support to the district court's construction of the proof of loss provision. The time of payment provision states that "all accrued indemnities . . . will be paid each thirty days during the continuance of the period for which the Company is liable." In this provision "period for which the Company is liable" definitely refers to the total period of liability, not a thirty-day period during which benefits accrue. It would be inconsistent to have "period for which the Company [insurer] is liable" given two different interpretations in the same insurance policy.

. We conclude that the trial court did not err in ruling that Wall's action was not barred by the Statute of Limitations.

We will next consider the issue of whether the trial court erred in reversing the jury's verdict for Wall in granting a judgment notwithstanding the verdict for Penn. Life thereby denying coverage under the policy. In granting the judgment notwithstanding the verdict, the district court determined that Wall had failed to prove, as a matter of law, that his injury had been caused by an accident, as the term accident was defined for the jury. In addition, the court based its decision on its determination that the policy had lapsed on November 4, 1972, when Wall failed to pay the first renewal premium.

In determining whether Wall failed to prove, as a matter of law, that his injury

was due to an accident we must consider the proper definition of the term accident.

The policy states that Penn. Life "does hereby insure . . . [Wall] against specified loss resulting from Injury . . . as hereinafter defined . . . ." "INJURY, whenever used in this policy, means *bodily injury caused by an accident* occurring while this policy is in force and resulting directly and independently of all other causes in loss covered by this policy. (Emphasis added.)" Accident is not defined anywhere in the policy.

In its opening instruction to the jury the trial court gave the following definition of accident:

" 'accident' as used in the policy in this case means: 'happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected.' If a result is such as follows from ordinary means voluntarily employed in a not unusual or unexpected way, it cannot be called a result effected by an 'accident,' but if in the act which produces an injury something unforeseen, unexpected, or unusual occurs which produces the injury, then the injury resulted from an 'accident.' "

At the close of the trial, the court instructed the jury as follows:

"A herniated or ruptured disc is an injury. If such an injury is caused by exertion or movement arising out of normal activity, there is no accident. But if the exertion or movement causing the injury is due to some specific event that occurred, which event was unexpected or unusual or not in the ordinary course of things, there is an accident."

Wall's attorney objected to the proposed instructions regarding accident prior to trial and prior to final instructions. Wall's requested instruction number seven, which would have instructed the jury that the term accident is to be construed in its plain, ordinary, and popular sense unless the parties clearly intended the term to be used in a technical sense, was rejected by the trial court.

On appeal, Wall contends that the trial court gave an erroneous instruction regarding accident and that Wall did prove, as a matter of law, that he had been injured as the result of an accident. Because accident was not defined anywhere in the policy, we must determine what the parties to the insurance policy intended the term to mean.

Penn. Life contends that the trial court properly defined accident for the jury. The instruction, in essence, provided that an accident takes place only when the means or act that caused the accident was unexpected, unforeseen, or unusual. If an accident results from an intended act, no accident has occurred even if the resulting injury was unforeseen, unexpected, or unusual. Penn. Life asserts that because Wall's work in loading the seed drill was normal and intended, the resulting injury was not an accident even though it was unforeseen, unexpected, or unusual.

Wall asserts that the proper definition of accident should have been based upon the result-oriented test. Under this test, an accident occurs when an unforeseen, unexpected, or unusual injury occurs, even though the means or act that produced the injury was an intentional act.

Because both definitions of accident are plausible and no definition was included in the policy, we conclude that the term accident is ambiguous. Therefore, we must determine which definition was intended by the parties to be applicable.

When an ambiguity exists in an insurance policy, certain rules of construction apply. The following North Dakota Century Code sections are applicable:

"*9–07–19. Uncertainty interpreted against party causing it—Presumptions as to cause.*—In cases of uncertainty . . the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. . . ."

"*9–07–14. Interpreted as promisor believed promisee understood it.*—If the terms of a promise in any respect are ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed at the time of making it that the promisee understood it."

"*9–07–09. Words to be interpreted in ordinary sense.*—The words of a contract are to be understood in their ordinary and popular sense rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed."

As we stated in *Hughes v. State Farm Mutual Automobile Insurance Company*, 236 N.W.2d 870, 885 (N.D.1975), insurance policies drawn by the company are adhesion contracts and any ambiguity must be construed most strongly against the company. *Williams v. Niesen*, 261 N.W.2d 401, 403–404 (N.D.1977); *Mills v. Agrichemical Aviation, Inc.*, 250 N.W.2d 663, 670–671 (N.D.1977). If one interpretation of the policy language will impose liability on the insurer and the other will not, the interpretation favorable to the insured will be adopted. *Williams v. Niesen, supra* 261 N.W.2d at 404; *Mills v. Agrichemical Aviation, Inc., supra* at 250 N.W.2d at 670. Finally, "an insurance policy is held to mean what a reasonable person in the position of the insured would think it meant." *Haugen v. Auto-Owners Insurance Co. of Langsing*, 191 N.W.2d 274 (Syllabus 4) (N.D.1971).

In *Jacobson v. Mutual Ben. Health & Accident Assn.*, 69 N.D. 632, 289 N.W. 591 (1940), we considered the definition of accidental means. A majority of jurisdictions no longer recognizes a distinction between accidental means and accident. *Knight v. Metropolitan Life Insurance Company*, 437 P.2d 416, 420 (Ariz.1968); *INA Life Insurance Company v. Brundin*, 533 P.2d 236, 241 (Alaska 1975). Therefore, we will consider cases dealing with the definition of accidental means to be applicable in the present case which involves the definition of accident.

In *Jacobson, supra*, we recognized that there are two different views regarding the definition of accidental means. The strict,

limited definition suggests that if the means or act was intended, the injury did not occur by accidental means even if the result was unusual, unexpected, or unforeseen. *Jacobson, supra* 289 N.W. at 594–595. The liberal definition states that even if the means or act was intended, if the act causes an unforeseen and unexpected injury, that injury occurred by accidental means. *Jacobson, supra* 289 N.W. at 595–596.

In *Jacobson, supra,* we adopted the following definition of accidental means in Syllabus 1:

> "The term 'accidental means' . . . includes such means as produce effects which are not their natural and probable consequences. An effect which does not ordinarily follow, an effect which can not be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and can not be charged with the design of producing, is an effect produced by accidental means."

We further defined accident in *Grabau v. Hartford Accident & Indemnity Company,* 149 N.W.2d 361, 367 (N.D.1967), where we held that no accident had occurred where the evidence showed that only ordinary exertion preceded the injury. In *Grabau, supra,* 149 N.W.2d at 367, we included the following definition of accidental means from *Commercial Casualty Ins. Co. v. Mathews,* 57 Ga.App. 446, 195 S.E. 887, 892 (1938):

> ". . . when the facts show that no unforeseen, unexpected, unusual, unintentional, or involuntary muscular effort or exertion occurred in the doing of the act which preceded the injury, the injury can not be regarded as resulting from accidental means . . . .."

In summary, we have previously held that when an act produces an injury which does not ordinarily occur following the act, was not reasonably anticipated and which the actor did not intend to produce, that act resulting in an injury constitutes an accident. In addition, some unforeseen, unexpected, unusual, unintentional, or involuntary muscular effort or exertion must have occurred during the act which caused the injury in order for the act to constitute an accident. In essence, we have followed the liberal rule that an accident is an accident whether it was caused by unintended accidental means or is caused by intended means that produced an unintended accidental result, as long as some unusual exertion or muscular effort occurred.

■ We specifically adopt the liberal definition of accident which is being followed in a growing number of jurisdictions. *Brundin, supra* 533 P.2d at 239; 10 Couch on Insurance 2d § 41:30 (2d ed. 1962). We adopt the following definition of accident given by the trial court in *Continental Casualty Company v. Jackson,* 400 F.2d 285, 288 (8th Cir. 1968):

> " 'The word "accident" as used in this case means happening by chance, unexpectedly taking place, not according to the usual course of things.
>
> " 'You are instructed in this regard that if the insured does a voluntary act, the natural and usual, and to be expected result of which is to bring injury upon himself, then . . . [an injury] so occurring is not an accident. But *if the insured does a voluntary act, without knowledge or reasonable expectation that the result thereof will be to bring injury upon himself . . . then a bodily injury . . . is caused by accident.'* " [Emphasis added.]

By specifically adopting the liberal definition of accident, we do not overrule *Grabau, supra,* which is distinguishable on its facts. In order for an injury to be caused by an accident, some unusually strenuous or extraordinary muscular action or exertion must occur. In *Grabau, supra,* the insured walked 100 yards and fired his deer rifle three times. There was no unusual or extraordinary muscular action or exertion.

■ The definition in *Jackson, supra,* exemplifies what a reasonable man would expect the term accident to mean in a health and accident insurance policy. In the present case, if Penn. Life had intended accident to mean something different it could have defined accident accordingly in

the policy and properly notified the policyholder of the variance from the normal definition. In this case, Penn. Life failed to define accident; the definition of accident must be construed most strongly against Penn. Life; and Penn. Life is not entitled to a strict, limited definition of accident that differs from the ordinary definition and would allow it to avoid liability under the policy.

In the present case, the trial court's instruction on accident was stricter and more limited than the definition we adopted in *Jacobson, supra*. It was also more limited than the definition of accident that we have specifically adopted in this opinion. Regardless of the overly restrictive instructions given by the trial court, the jury made a finding of fact that Wall had been injured by an accident. We must now determine whether the trial court erred in granting a judgment notwithstanding the verdict on the basis that, as a matter of law, Wall had failed to prove that his injury resulted from an accident.

█ In *Lovas v. St. Paul Insurance Companies,* 240 N.W.2d 53 (N.D.1976), syllabus 1, we summarized the law on motions for judgments notwithstanding the verdict as follows:

"On a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the party in whose favor the verdict was rendered, and such motion should not be granted unless the evidence shows that the moving party is entitled to judgment on the merits as a matter of law and is such that reasonable men could reach but one conclusion as to the verdict."

*Belinskey v. Hansen,* 261 N.W.2d 390 (N.D. 1977); *Nokota Feeds, Inc. v. State Bank of Lakota,* 210 N.W.2d 182 (N.D.1973); *Linington v. McLean County,* 146 N.W.2d 45 (N.D. 1966). In viewing the evidence most favorably to the party against whom the motion is made, that party is entitled to the "benefit of all reasonable inferences from the evidence . . . .." *Nokota Feeds, supra,* 210 N.W.2d at 187.

█ We have already determined that the trial court in the present case improperly instructed the jury with a narrow definition of the term accident. However, given the trial court's narrow, limited instruction we cannot say that Penn. Life was entitled to a judgment on the merits as a matter of law. We conclude that, even though accident was narrowly defined for the jury, reasonable men could consider the evidence and reach the conclusion that Wall had been injured due to an accident. Because the jury found for Wall despite the narrow instruction, we must assume that it would have also found for Wall had it been given the proper instruction.

We conclude that the district court improperly granted Penn. Life a judgment notwithstanding the verdict on the ground that Wall had failed to prove, as a matter of law, that his injury had been caused by an accident. We further conclude that Wall was entitled to the judgment awarded by the jury.

█ We must now determine whether the district court erred in granting a judgment notwithstanding the verdict on the ground that the policy had lapsed when Wall failed to pay his first renewal premium on November 4, 1972, and that Penn. Life was not liable under the policy. We agree with the district court that Wall's policy lapsed when Wall failed to pay the first renewal premium. We disagree, however, with the district court's ruling that the lapse terminated Penn. Life's liability to Wall for benefits arising from Wall's accidental injury which occurred while the policy was in effect.

Because Wall failed to pay his renewal premium in 1972 and the policy's waiver of premium option did not go into effect until 12 months after the disabling injury, or in May of 1973, the district court properly ruled that the policy had lapsed. If Wall's disability ended today and he became disabled in the future from a totally different accident, Penn. Life would not be liable because the policy coverage for future disability ended in November of 1972.

Although the insurance contract regarding future liability lapsed in November of 1972, Penn. Life's liability for Wall's disability is not terminated by the lapse because Wall's accidental injury occurred in May of 1972 when the policy was still in force. *See Loesekan v. Benefit Trust Life Insurance Company*, 552 P.2d 36 (Colo.Ct.App.1976); *Simmons v. Western Indemnity Co.*, 210 S.W. 713 (Tex.Civ.App.1919); *Burkheiser v. Mutual Accid. Ass'n of the Northwest*, 61 F. 816 (7th Cir. 1894); *Illinois Banker's Life Ass'n v. Byassee*, 275 S.W. 519 (Ark.1925). As stated in *Loesekan, supra,* 552 P.2d at 37:

> "The benefits of the insured and the liability of the insurer are fixed at the time of the occurrence of the compensable event and subsequent lapse of or termination of the policy does not change those benefits and liabilities. *American Casualty Co. v. Horton,* 152 S.W.2d 395 (Tex. Civ.App.1941); *Commercial Casualty Co. v. Webb,* 210 Md. 8, 121 A.2d 832 (1956)."

The policy contains no provision which terminates its liability for a pre-lapse injury based on a subsequent lapse. In fact, the policy specifically states that

> "If injury . . . causes continuous total disability . . . commencing while this policy is in force . . . the Company will pay periodically the Monthly Benefit stated in the Policy Schedule for each month . . . during which such total disability continues so long as the Insured lives and suffers such total disability."

The above language clearly shows that benefits for an injury do not end if the policy lapses or terminates.

We conclude that Penn. Life's liability for Wall's disability which began in May of 1972 was not terminated when the policy lapsed in November of 1972 after Wall failed to pay the renewal premium. Therefore, we conclude that the district court erred in ruling that the policy lapse constituted a ground for entering a judgment notwithstanding the verdict in favor of Penn. Life.

We will now consider whether the district court erred in granting Penn. Life's motion for a new trial in the event that the judgment notwithstanding the verdict was reversed on appeal. A motion for a new trial is controlled by Rule 50(c)(1), N.D.R.Civ.P., which provides, in pertinent part:

> "If the motion for judgment notwithstanding the verdict . . . is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. *In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered.*" [Emphasis added.]

The district court granted a conditional new trial on the grounds that the evidence was legally insufficient to justify the verdict and the verdict was contrary to law pursuant to Rule 59(b)(6), N.D.Civ.P. As we have stated before, a motion for a new trial based upon sufficiency of the evidence "is addressed to the sound discretion of the trial court, and the trial court's action in granting such a motion will not be disturbed on appeal unless a manifest abuse of discretion is shown." *Cook v. Stenslie,* 251 N.W.2d 393, 395 (N.D.1977). See *Skjonsby v. Ness,* 221 N.W.2d 70 (N.D. 1974); *Brinkman v. State Farm Mutual Automobile Insurance Company,* 187 N.W.2d 657 (N.D.1971); and *Linington v. McLean County,* 161 N.W.2d 487 (N.D. 1968). A trial court abuses its discretion when it acts in an arbitrary, unreasonable or unconscionable manner. *Cook, supra,* 251 N.W.2d at 396. A new trial may not be granted if the trial court merely disagrees with the jury's verdict when the evidence is nearly balanced or where different minds could reach different conclusions. In order to set aside a jury verdict and grant a new trial, the trial court must find the verdict to

be manifestly against the weight of the evidence. See *Cook, supra,* 251 N.W.2d at 395–396; *Maier v. Holzer,* 123 N.W.2d 29 (N.D.1963); *Kohlman v. Hyland,* 56 N.D. 772, 219 N.W. 228 (1928). In addition, before we can reverse an order granting a new trial, a stronger showing of abuse of discretion is required than is required to reverse an order denying a new trial. *Cook, supra,* 251 N.W.2d at 396; *Wrangham v. Tebelius,* 231 N.W.2d 753 (N.D.1975); *Johnson v. Frelich,* 165 N.W.2d 343 (N.D. 1969).

In the present case the jury found that Wall had been injured due to an accident and that Penn. Life was liable for benefits under the policy, even though the trial court gave a limited definition of the term accident. A perusal of the record indicates that reasonable jurors, after viewing the evidence, could have returned a verdict for either Wall or Penn. Life. Because Wall presented a substantial amount of evidence to support his position that Penn. Life was liable to him, we conclude that the jury's verdict for Wall did not constitute an abuse of discretion. We cannot say, as a matter of law, that Wall was not injured by an accident. In addition, Penn. Life's liability under the policy arising from Wall's accident was not terminated even though the policy later lapsed when Wall failed to pay the renewal premium. We conclude that the district court abused its discretion in granting Penn. Life's motion for a new trial. In the present case the jury answered 17 special interrogatories in Wall's favor and returned a verdict for Wall which was not manifestly against the weight of the evidence or contrary to law. We reverse the district court's order granting a new trial.

In summary, we hold that the district court properly ruled that Wall's action was not barred by the statute of limitations; the district court erred in granting Penn. Life's motion for a judgment notwithstanding the verdict on the ground that Wall failed to prove, as a matter of law, that he had been injured accidentally while the policy was in effect; the policy lapsed in No-

vember of 1972 and Penn. Life is not liable for new disabilities arising after that time; although the policy lapsed, Penn. Life remains liable for all disability benefits arising from Wall's injury which occurred in May of 1972 while the policy was still in effect; the district court erred in granting Penn. Life's motion for a judgment notwithstanding the verdict on the ground that the policy had lapsed; and the district court erred in granting Penn. Life's motion for a new trial on the grounds of insufficiency of the evidence and that the verdict was contrary to law.

Accordingly, we reverse the district court's order granting Penn. Life's motion for a judgment notwithstanding the verdict and conditional motion for a new trial, and we reinstate the jury's verdict and judgment.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.